COMMONWEALTH *vs.* FRANCIS J. GALLAGHER.

Middlesex. September 5, 1990. - November 8, 1990.

Present: LIACOS, C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Homicide. Evidence*, Admissions and confessions, Prior conviction, Photograph. *Practice, Criminal*, Voir dire, Mistrial, Unsworn statement by defendant, Instructions to jury.

A criminal defendant who made a sufficient showing of the involuntariness of statements made by him to three people was entitled to a voir dire on the issue [514-515]; in the circumstances, no prejudice to the defendant was shown by the judge's conducting the voir dire after the first of the three persons had testified before the jury as to the statements made by the defendant [515].

The record of a voir dire on the issue of the voluntariness of a criminal defendant's statements to three persons fully supported the judge's findings that the statements were voluntary. [515-516]

The judge at a murder trial properly exercised his discretion to admit in evidence, for impeachment purposes, some of the defendant's convictions and to exclude others. [516-517]

The judge at the trial of a murder indictment properly denied the defendant's motion for a mistrial based on a witness's response indicating that the defendant was in jail after his arrest, where, in the circumstances, the remark could not have tainted the jury's verdict. [517-518]

The judge at a murder trial properly exercised his discretion to deny the defendant's request to make an unsworn statement to the jury. [518-519]

No error appeared at the trial of a murder indictment in the judge's admission of photographs of the victim's body, including an autopsy photograph. [519]

No substantial likelihood of a miscarriage of justice was demonstrated by the judge's use of a certain illustration to describe the concepts of circumstantial evidence and inferences. [519-520]

The record of a criminal trial in which the defendant was convicted of first degree murder by reason of extreme atrocity or cruelty provided no basis for this court's exercise of its power under G. L. c. 278, § 33E. [520-521]

INDICTMENT found and returned in the Superior Court Department on February 11, 1988.

The case was tried before *Hiller B. Zobel*, J.

*John H. LaChance* (*Stephen E. Dawley* with him) for the defendant.

*LaDonna J. Hatton*, Assistant District Attorney, for the Commonwealth.

GREANEY, J. A jury in the Superior Court convicted the defendant of murder in the first degree by reason of extreme atrocity or cruelty. On appeal, the defendant claims error in: (1) the denial of a pretrial voir dire on the voluntariness of statements made by him to three friends and the admission of the statements in evidence; (2) the admission of evidence of his prior convictions; (3) the denial of a mistrial after a witness stated before the jury that the defendant was in jail; (4) the denial of his request to make an unsworn statement to the jury; (5) the admission in evidence of photographs of the victim's body; and (6) the judge's use of a particular illustration during jury instructions to explain circumstantial evidence and inferences. We reject the defendant's claims and affirm the conviction. We also conclude that there is no reason to exercise our power under G.L. c. 278, § 33E (1988 ed.), to direct the entry of a verdict of a lesser degree of guilt or to order a new trial.

Based on the evidence at the trial, the jury could have found the following facts. On the evening and night of November 13, 1987, the defendant (who had scratches and abrasions on his face and neck and was missing an upper front tooth) told friends in three separate conversations that he had been at the victim's apartment that afternoon when three Puerto Rican men, there to complete a cocaine deal, assaulted him and attacked and stabbed the victim. The defendant also stated that he went home after the incident, showered, put his bloodstained clothing into a plastic bag, then discarded the bag in the vicinity of Route 128.

The police discovered this bag. Among other things, the bag contained a bloodstained knife (adhering to which were human hairs matching the victim's hair type), the defend-

ant's bloodstained boots (which matched bloody footprints found at the murder scene), and the defendant's bloodstained jeans, shirt, and socks. A pierced earring and a hair consistent with the victim's was embedded in one of the defendant's socks. Later, on the night of November 13, 1987, police discovered the victim's body in her apartment. She had sustained multiple blunt-force head wounds and multiple stab wounds to the face, neck, and body.[1] The defendant's fingerprints were found on the scene; and a dental crown matching the gap where the defendant was missing an upper front tooth was next to the victim's body.

This, in essence, was the Commonwealth's case. The jury evidently inferred that the defendant went to the victim's apartment on the afternoon of the thirteenth of November, 1987, that a fight erupted, and that the defendant killed the victim by repeatedly striking her head against a door frame and by stabbing her repeatedly. Additional facts and evidence will appear below in relation to specific claims of error.

1. *Denial of pretrial voir dire and admission of incriminating statements by the defendant.* Late on the afternoon of the thirteenth, the defendant drove to the workplace of a roommate, Bill Hyslip. Hyslip noticed that the defendant's nose was scraped, that there were scratches on his neck, and that his top front tooth was missing, and asked the defendant what had happened. The defendant told Hyslip that he had been at the victim's apartment awaiting the completion of a cocaine sale between the victim and three Puerto Rican men, that the transaction had turned violent, the victim was stabbed, that he himself had been knocked unconscious, and that the victim was dead. At that time, Hyslip noticed no smell of alcohol on the defendant's breath, no slurred speech, and he considered the defendant coherent.

---

[1]Blood was found in many locations in the apartment, including a door frame. The medical examiner testified that the victim's massive head injuries occurred when her head was struck against the door frame. There was ample evidence to support a finding that the homicide had been committed with extreme atrocity or cruelty.

After this conversation, the defendant drove to a nearby restaurant, where he met another friend, Garry Fisher. According to Fisher, the defendant at this time appeared sober and not under the influence of alcohol or cocaine. The two began drinking together, but not until after the defendant had given Fisher substantially the same account that he had earlier given Hyslip. While at the restaurant, the defendant obtained roughly one-half gram of cocaine and administered it to himself, intravenously, in the men's room. Shortly thereafter, Fisher found the defendant convulsing on the floor of the men's room with a hypodermic syringe in his arm. Fisher revived him, got him a drink, and arranged a ride home for him. By the time he arrived home, the defendant was calm and walked unaided into the house.

Once home, the defendant spoke with Hyslip and his other roommate, Cindy Pearson. Although Hyslip "didn't really notice" whether the defendant was intoxicated at the time, the defendant did appear upset and frightened. The defendant repeated essentially the same version of events that he had earlier related to Hyslip and Fisher. During the conversation, the defendant and Hyslip smoked a marihuana cigarette.[2]

The defendant moved before trial for a voir dire on the voluntariness of these statements, arguing that they were involuntary because he was under the influence of alcohol and drugs when he made them.[3] See *Commonwealth* v. *Allen*, 395 Mass. 448, 456 (1985). Concluding in essence that the defendant had failed to raise an issue of voluntariness, the judge denied the motion without prejudice to the defendant's right to renew it during the trial if the testimony warranted.

---

[2]Pearson gave the defendant some of her heart medication pills to calm him, but not until after the conversation.

[3]In his motion the defendant also referred to statements he made on November 14 and 15 to Hyslip and Pearson. To the extent that the two could remember them, these statements related to matters that do not appear to be relevant here. In any event, the judge found them voluntary, and his determination of that fact is sound.

During the trial, in the course of the direct examination of Hyslip, and after Hyslip had testified to the defendant's statements made to him at his workplace on the evening of November 13, the judge sua sponte reopened the question of the voluntariness of the defendant's statements, and, after dismissing the jury, held a voir dire. Hyslip, Fisher, and Pearson testified, and defense counsel carefully examined each. At the conclusion of the testimony, the judge stated his findings for the record. The judge's subsidiary findings essentially tracked the facts as stated above. The judge concluded as to all of the defendant's statements that the Commonwealth had shown beyond a reasonable doubt that they were the product of a rational intellect and not made when the defendant was intoxicated or under the influence of drugs. The defendant objected to this ruling, and in this court challenges both the timing of the voir dire and the correctness of the judge's findings. First, the defendant asserts that he was entitled to a pretrial voir dire because he sufficiently raised a question of voluntariness in his motion. Second, the defendant claims that the judge clearly erred in finding that his statements were voluntary.[4]

a. We agree with the defendant that he made a sufficient showing of involuntariness so as to entitle him to a hearing on the question. Along with his motion, which stated the ground on which it was based, the defendant submitted an affidavit and a memorandum of law. See Mass. R. Crim. P. 13 (a) (2), (4), 378 Mass. 871 (1979). In the affidavit, in relevant part, he stated: "At the time the statements were made I was high and intoxicated as the result of the consumption of substantial quantities of cocaine and alco-

---

[4]The defendant did not object at trial to Hyslip's pre-voir dire testimony regarding the defendant's first statement. Nor does he argue here that it was reversible error to allow the jury to hear that testimony prior to a finding of voluntariness. See *Commonwealth v. Paszko*, 391 Mass. 164, 173 n.10 (1984). We consider the issue ‧waived. *Commonwealth v. Cordeiro*, 401 Mass. 843, 852 n.12 (1988); Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

hol. . . ." Although the affidavit is not a model of comprehensive detail, it focused on the critical fact that, at the time the statements were made, the defendant was impaired by cocaine and alcohol. Compare *Commonwealth* v. *Brady*, 380 Mass. 44, 51 (1980). This was enough to serve the purpose of Mass. R. Crim. P. 13 (as to which see *Commonwealth* v. *Santosuosso*, 23 Mass. App. Ct. 310, 313 [1986]), and to present the question of the voluntariness of the statements. "When the voluntariness of a defendant's statements to private citizens is an issue, the judge should conduct a voir dire to determine the voluntariness of the statements." *Commonwealth* v. *Allen*, *supra* at 456. Therefore, the defendant was entitled to a voir dire before Hyslip repeated the first of the defendant's statements before the jury.

In the circumstances, however, we reject the defendant's argument that the timing of the voir dire caused him prejudice. First, at the voir dire, defense counsel thoroughly examined the three witnesses, all of whom he had previously interviewed. Second, counsel effectively argued his position on the evidence to the judge, who had considered the memorandum prepared by counsel as well as the probable cause hearing testimony of two of the witnesses. Third, after the voir dire, the judge expressly found all of the statements voluntary. This clearly negated any prejudice to the defendant. *Commonwealth* v. *Paszko*, *supra* at 173 n.10. Fourth, the judge in his instructions directed the jury to reconsider the question of the voluntariness of the statements.[5]

b. The defendant also argues that the judge clearly erred in finding that the disputed statements were voluntary. We will not disturb the judge's subsidiary findings absent clear error, *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743

---

[5]The judge instructed the jury as follows: "[Y]ou must consider whether, when [the defendant] made the statements, his will, his control over what he said, was so affected by either alcohol or drug[s] . . . that he was . . . incapable of not making the statement. . . . If you conclude that the statement was not voluntary, then you must disregard [it] . . . . [I]t's the Commonwealth's obligation to persuade you beyond a reasonable doubt that the statement was made voluntarily."

(1990), and we accord substantial deference to the judge's ultimate findings. *Commonwealth v. Doucette*, 391 Mass. 443, 447 (1984). The record fully supports the judge's findings, and we see no reason to disturb them. See *Commonwealth* v. *Allen, supra* at 457-458.

2. *Admission of evidence of prior convictions.* Prior to trial, the defendant filed a motion in limine for an order prohibiting the Commonwealth from using evidence of his prior convictions for impeachment purposes. After a hearing, the judge excluded evidence of five prior convictions for breaking and entering and larceny, but ruled admissible evidence of the defendant's 1976 conviction for breaking and entering and larceny, and evidence of his 1981 conviction for receiving stolen property. The defendant took the stand at trial and, rather than suffer impeachment by the prosecutor, testified on direct examination to the existence of the prior convictions. Here, the defendant contends that the judge abused his discretion in denying in part his motion in limine because the likely effect of the evidence of seven and twelve-year-old convictions was to portray the defendant as a career criminal and recidivist.

There was no abuse of discretion. First, there is no argument that the formal requirements of G. L. c. 233, § 21 (1988 ed.), were not satisfied.[6] Second, the judge manifestly recognized that he had discretion to exclude evidence of the prior convictions, see *Commonwealth v. Chase*, 372 Mass. 736, 750 (1977); he excluded evidence of five convictions that it was within his discretion to admit. Moreover, the judge clearly charged the jury that the prior convictions were relevant only in evaluating the believability of the defendant. See *Commonwealth* v. *Ruiz*, 400 Mass. 214 (1987). Third, we already have upheld a discretionary decision to admit evidence of prior convictions for breaking and entering and receiving stolen property in connection with a first degree mur-

---

[6]Under the statute, the defendant's 1976 conviction was revived for use in impeachment by his 1981 conviction.

der prosecution. See *Commonwealth* v. *Fano*, 400 Mass. 296, 300-305 (1987).

3. *Denial of motion for a mistrial.* The State police supervised a dental examination of the defendant for the purpose of comparing the crown that was found near the victim's body with the space where his top front tooth was missing. A State trooper who was present at this examination testified about the procedure. On cross-examination, the officer admitted that, during the examination, the dentist lost a strand of hair that had been attached to the crown when it was found. On redirect examination, apparently to deflect the inference supported by the loss of the hair that the police investigation had been less than careful, the prosecutor returned to the topic. The following exchange ensued.

PROSECUTOR: "[Do you recall] whether or not hairs were observed in the area where the examination was being conducted?

WITNESS: "Unfortunately, the chair was also used as a barber chair in the jail."

Defense counsel objected to this response, but made no motion to strike. Sometime later (after the end of redirect and after recross), counsel requested a curative instruction and a mistrial. The judge denied the motion for a mistrial, but instructed the jury that the locus of the dental examination was immaterial to the case. The defendant now asserts that the denial of the mistrial was reversible error.

Whether to declare a mistrial is within the trial judge's discretion. *Commonwealth* v. *Amirault*, 404 Mass. 221, 232 (1989), and cases cited. In this case, before the witness made the remark in question, the jury knew that the defendant had been taken into custody by the police. In view of this, and of the fact that the defendant was charged with first degree murder, it is difficult to imagine that the jury would infer anything other than that he remained in custody at the time of the trial. See *Commonwealth* v. *Billings*, 6 Mass. App. Ct. 884, 885 (1978). Also, the officer's reference to the fact that the defendant was in jail was the only such reference in the course of a ten-day trial. Neither counsel nor witnesses re-

ferred to the fact again. Furthermore, the judge promptly instructed the jury that the location of the dental examination was irrelevant. Presumably, the jury understood and followed this instruction. See *Commonwealth* v. *Andrews,* 403 Mass. 441, 452 (1988); *Commonwealth* v. *Leno,* 374 Mass. 716, 719 (1978).[7] In these circumstances, the remark could not have tainted the jury's verdict. See *Commonwealth* v. *Stetson,* 384 Mass. 545, 556 (1981); *Commonwealth* v. *Gibson,* 357 Mass. 45, 48, cert. denied, 400 U.S. 837 (1970); *Commonwealth* v. *Mayo,* 21 Mass. App. Ct. 212, 218-220 (1985); *Commonwealth* v. *Billings, supra* at 885. There was no abuse of discretion in denying a mistrial.

4. *Denial of request to make an unsworn statement.* Before the defendant took the stand, defense counsel asked that the defendant be allowed to make an unsworn statement in lieu of testifying under oath. After a bench conference, the judge denied the request. The defendant now charges that this decision was an abuse of discretion.

"[T]here is no place for the unsworn statement except in the discretion of the trial judge." *Commonwealth* v. *Rodriquez,* 364 Mass. 87, 96 (1973). See generally *Commonwealth* v. *O'Brien,* 360 Mass. 42 (1971). "[P]ermitting such a statement is not . . . required whether or not a defendant chooses to testify." *Commonwealth* v. *Clark,* 363 Mass. 467, 472 (1973). The judge here denied the defendant's request

---

[7] We reject the defendant's argument, based on *Commonwealth* v. *Crehan,* 345 Mass. 609 (1963), that the judge's instruction was inadequate. In *Crehan,* the jury presumably were exposed to a newspaper article that referred to the defendants' criminal record. *Id.* at 612-613. At the end of the trial (eight days later), rather than immediately after the matter came to his attention, the judge gave the jury an oblique cautionary instruction. On appeal, the court held that the judge erred in denying the defendants mistrials, because the delayed and general instruction was insufficient to dispel the prejudice to their cases. *Id.* at 614-615. Here, the judge told defense counsel how he would instruct the jury; counsel agreed to the instruction as described. Almost immediately after this bench conference, the judge delivered this instruction. If defense counsel remained concerned about the efficacy of the instruction, he should have asked the judge to clarify it or to strike the witness's response altogether.

after entertaining defense counsel's argument. It was within his discretion to do so.

5. *Photographs of the victim.* After a lengthy bench conference, the judge declared admissible a number of photographs of the victim's body, including one taken during the autopsy and showing the interior of the victim's skull with brain matter removed. The defendant argues that several of the photographs were either irrelevant, cumulative, or unfairly prejudicial, and that the judge erred in admitting them.

"The admissibility of photographic evidence is left to the discretion of the trial judge, and we will overturn the judge's decision only where a defendant is able to bear the heavy burden of demonstrating an abuse of that discretion." *Commonwealth* v. *Waters*, 399 Mass. 708, 715 (1987). See also *Commonwealth* v. *Richenburg*, 401 Mass. 663, 672 (1988). "[I]f the photographs possess evidential value on a material matter, they 'are not rendered inadmissible solely because they are gruesome [or duplicative] or may have an inflammatory effect on the jury.' " *Commonwealth* v. *Ramos*, 406 Mass. 397, 407 (1990), quoting *Commonwealth* v. *Bys*, 370 Mass. 350, 358 (1976). We have examined the disputed photographs. All were relevant to whether the murder was committed with extreme atrocity or cruelty, which was at issue. See *Commonwealth* v. *Sielicki*, 391 Mass. 377, 382 (1984). As to the autopsy photograph of the skull interior, the judge admitted it only after a "careful assess[ment]." *Commonwealth* v. *Bastarache*, 382 Mass. 86, 106 (1980). The photograph clarified the nature and extent of the victim's several head injuries in a way that the other photographs did not. See *Commonwealth* v. *Richenburg*, *supra* at 672-673. There was no abuse of discretion.

6. *Jury instructions on circumstantial evidence and inferences.* While instructing the jury on circumstantial evidence and inferences, the judge, without objection from the defendant, used the illustration set forth in the margin to describe

the two concepts.[8] The defendant claims that this illustration was so similar to the circumstances of the case that it gave rise to a substantial likelihood of a miscarriage of justice. *Commonwealth v. Skinner, ante* 88, 92 (1990). We disagree. We effectively approved a virtually identical illustration in *Commonwealth v. Shea,* 398 Mass. 264, 270-271 & n.3 (1986). The use of the illustration here, as in *Shea,* was not an abuse of discretion. There was no substantial likelihood of a miscarriage of justice.[9]

7. *Review under G. L. c. 278, § 33E.* The defendant was convicted of murder in the first degree on the basis of extreme atrocity or cruelty. The evidence supported the jury's verdict. This senseless murder was brutal in the extreme. The

---

[8]"Let me give you an illustration that doesn't have anything to do with this case. Suppose that a family, which family includes children, has a family rule that after dessert and the evening meal there is no snacking on the dessert. And let's suppose that the family had chocolate cake for dessert and that when everybody got finished having the portion that they were to have, the chocolate cake was exactly a semi-circle, just half the cake had been eaten. The remainder of the cake is put on a plate, covered with a bell jar, and put on the kitchen counter to wait for tomorrow.

"Let's suppose when the grownups in the house come downstairs later in the evening to make sure everything is closed up and there's one of the youngsters in the house standing at the kitchen sink. The water's running. The kid is scrubbing the plate; the plate looks as though it has some chocolate smears on it. The kid's cheek certainly has a chocolate smear, and there's a few crumbs on the front of his shirt, and over on the kitchen counter the bell cover is off and what was once half a cake is now closer to three-eighths of a cake.

"Now, nobody saw what happened. But using common sense and taking all the facts and putting them together - the three-eighths cake where there was once half a cake, the smear, the crumbs, the plate with chocolate on it - taking all that together, a person would draw the conclusion that the youngster was engaged in having some forbidden goodies. . . . What I'm talking about is thinking, concentrating on facts, and reaching logical, common sense, everyday conclusions from the facts."

[9]Although it is not clear, the defendant seems also to argue that the judge's instructions on reasonable doubt were erroneous. Assuming that the reference in the defendant's brief rises to the level of appellate argument, there was no substantial likelihood of a miscarriage of justice. The portion of the charge on reasonable doubt conforms almost exactly, and in all material respects, to the description of reasonable doubt in *Commonwealth v. Webster,* 5 Cush. 295, 320 (1850).

victim's death was due to a combination of injuries, including six "chop" type head wounds, a partially crushed skull with tearing of the brain, and a total of seven stab wounds in the victim's side, back, face, and neck. The victim also sustained fractures of the nose and jaw, lacerations of the face and hands, and at least thirty abrasions, contusions, and superficial lacerations of the head. In view of the viciousness of the crime, the fact that the defendant may have been intoxicated or under the influence of cocaine when he committed the crime does not move us to provide § 33E relief. See *Commonwealth* v. *Libby*, 405 Mass. 231, 236-237 (1989). Nor does anything else in the record provide any basis for reduction of the degree of murder or for a new trial.

*Judgment affirmed.*