## COMMONWEALTH *vs.* JAMES M. GARREY.

Norfolk. December 7, 2001. - March 29, 2002.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Homicide. Practice, Criminal,* Jury and jurors, Empanelment of jury, Challenge to jurors, Grand jury proceedings, Mistrial, Lesser included offense, Instructions to jury, Capital case. *Jury and Jurors. Constitutional Law,* Jury. *Grand Jury. Evidence,* Hostile witness, Prior misconduct, Motive, Relevancy and materiality, State of mind, Self-defense, Failure to produce evidence, Exculpatory, Expert opinion, Police report. *Self-Defense. Assault and Battery.*

At a murder trial, the evidence was sufficient as a matter of law to sustain a conviction of murder on a theory of extreme atrocity or cruelty, where there was evidence of the defendant's indifference to or taking pleasure in the victim's suffering. [426-427]

In a murder case in which the defendant objected to the prosecutor's peremptory challenge of a prospective juror, claiming that she was the only African-American in the venire, the judge, having ordered the prosecutor to explain his reason for challenging the prospective juror, did not abuse his discretion when he determined that the prosecutor's challenge, for the reason that the juror was a guidance counsellor and therefore overly sympathetic with defendants, was legitimate, where the record showed that the judge gave the matter meaningful consideration. [427-430]

At a murder trial, the judge did not err in discharging a deliberating juror whose son had been arrested the previous evening and held in lieu of bail at the same house of correction as the defendant, where there was no danger that the juror was a dissenting juror who was being allowed to evade her responsibilities, and where truly unique and compelling circumstances warranted the juror's discharge. [430-431]

In a murder trial, the judge's allowing the substantive use of a witness's grand jury testimony without first requiring the Commonwealth to show that it was inconsistent with his trial testimony was harmless, where the grand jury testimony was merely cumulative of other testimony, and where the jury's rejection of a certain theory put forth by the Commonwealth suggested that the testimony carried little weight. [432]

At a murder trial, the judge did not err in admitting evidence of a prior bad act by the defendant, where the evidence was sufficiently recent and probative of the defendant's jealousy as a motive, and within the judge's discretion to admit it for that purpose. [432-434]

At a murder trial, the judge's exclusion of certain state of mind evidence as too remote in time from the killing, while admitting certain other evidence even though it was as remote in time, was harmless error where the state of mind evidence would have been cumulative of other evidence. [434]

At a murder trial, the judge did not err in failing to grant a mistrial after a witness testified to a matter that the judge had previously ruled was inadmissible, where the judge's curative instructions to the jury were sufficient to remedy any possible prejudice to the defendant. [434-435]

At a murder trial, the judge did not err in excluding evidence of the defendant's exclamations of self-defense either under the rule of verbal completeness as "explanatory assertions of self-defense" with regard to the defendant's admission that he had stabbed the victim, or to show the defendant's intent and state of mind, or as spontaneous utterances. [435-437]

At a murder trial, there was no error in the judge's excluding evidence of the defendant's state of mind at booking, where the defendant's relevant state of mind on the point raised was at the time of the killing, not one and one-half hours later when he was in police custody. [437-438]

At a murder trial, the judge did not err in giving an initial aggressor instruction on self-defense where, since the evidence at trial indicated that the defendant initiated the confrontation, the instruction was warranted. [438]

At a murder trial, the judge did not err in failing to give an instruction on the lesser included offense of assault and battery, where simple assault and battery was not a possible verdict under either of two defense theories presented. [438]

At a murder trial, the judge erred in instructing the jury that they could consider a particular witness's grand jury testimony for its truth if it met certain foundational requirements, because the instruction inappropriately burdened the jury with a decision reserved for the judge; however, the error did not create a substantial likelihood of a miscarriage of justice under the circumstances. [438-439]

At a murder trial, the judge did not err in failing to sanction the Commonwealth for discovery violations, or, alternatively, in failing to grant a continuance for the Commonwealth's failure to disclose that a certain witness would repudiate certain pretrial statements, and that another witness would give exculpatory testimony, where the defendant failed to show that the prosecutor had foreseen that the first witness would give testimony at variance with the prior statements, and no prejudice existed because of thorough cross-examination by defense counsel, and where any prejudice from the failure to make timely disclosure of the anticipated testimony of the second witness also was eliminated by thorough cross-examination of defense counsel [439-440]; for the Commonwealth's failure to disclose expert testimony concerning blood spatter and defensive wounds where, although the judge should not have allowed this testimony, the lack of notice did not prejudice the defendant's case [440-441]; and for the Commonwealth's failure to disclose police notes concerning certain eyewitness accounts, where the defendant failed to show that his right to a fair trial was jeopardized by the Commonwealth's failure to preserve and provide the officers' notes [441-442].

INDICTMENT found and returned in the Superior Court Department on June 4, 1997.

The case was tried before *Thomas E. Connolly*, J.

*Wendy H. Sibbison (J.W. Carney, Jr.*, with him) for the defendant.

*Robert C. Cosgrove*, Assistant District Attorney (*Susanne M. O'Neil*, Assistant District Attorney, & *Ellen McCusker Devlin*, Assistant District Attorney, with him) for the Commonwealth.

SPINA, J. The defendant, James M. Garrey, was convicted of murder in the first degree on a theory of extreme atrocity or cruelty. On appeal he claims that the trial judge erred in (1) denying his motion for a required finding of not guilty; (2) permitting the prosecutor to exercise a peremptory challenge of an African-American juror; (3) discharging a deliberating juror; (4) allowing the substantive use of grand jury testimony; (5) excluding state of mind evidence; (6) admitting evidence of a prior bad act; (7) failing to grant a mistrial after a witness testified to a matter that the judge had previously ruled was inadmissible; (8) excluding evidence of the defendant's exclamations of self-defense; (9) excluding evidence of the defendant's state of mind at booking; (10) giving an initial aggressor instruction on self-defense; (11) failing to give an instruction on the lesser included offense of assault and battery; (12) failing to instruct that a particular witness's grand jury testimony could be used substantively; and (13) failing to sanction the Commonwealth for discovery violations, or, alternatively, to grant a continuance. The defendant also asks us to exercise our power under G. L. c. 278, § 33E, and reduce his degree of guilt. We affirm the conviction, and decline to exercise our power under G. L. c. 278, § 33E.

1. *Facts.* A jury could have found the following facts. In March, 1997, Tara Carloni, the defendant's former girl friend, told him that she had been having sexual relations with the victim, Corey Skog. In retaliation, the defendant told Skog's girl friend, Doreen D'Amelio, that Skog had been having sexual relations with Carloni. The defendant also told a friend, Paul Cauble, that he knew Carloni had been having sexual relations with Skog, that he wanted to beat up Skog, and that he intended to fight him.

D'Amelio, the defendant, and Skog were all employed at the same office. On the evening of Wednesday, March 26, D'Amelio

left her desk at work and stepped outside for a cigarette break. Skog went outside to speak with her. While they were talking, the defendant joined them, stood behind D'Amelio, and began to look at Skog. The defendant raised his hands, made a facial expression of disgust, and walked away. D'Amelio and Skog continued talking. Later that evening, they reconciled after he apologized for his relationship with Carloni.

The next evening, D'Amelio went to a bar in Franklin with Skog and Melissa Wheeler, a friend. They arrived at about 11:15 P.M. They were joined by Scott Haigh, Wheeler's boy friend. Meanwhile the defendant arrived at the bar looking for D'Amelio after recognizing her vehicle in the parking lot. He spoke with her briefly, and later asked her to join him at his table. She obliged. The defendant stared at Skog for a moment, then "[v]ery harshly" asked D'Amelio, "Would you mind if I hit [Skog]?" D'Amelio responded that she "would mind very much." The defendant said, "I can't believe [Skog] would throw you away for . . . Tara. I would do anything to have a girl like you. I would kill to have a girl like you. I've had a crush on you since freshman year. I wanted to ask you to the freshman banquet." D'Amelio said, "Listen, that's really nice of you to say all that, but I like [Skog]. And if I can't be with him right now I don't want to be with anyone." She walked away.

Later, while D'Amelio was with Skog, the defendant approached her and said that he was leaving. She noticed that Skog was looking at the door and the defendant was glaring back at him. Skog appeared to be "a little bit anxious, a little nervous."

D'Amelio decided to leave. Skog followed and called after her. The defendant blocked his way and said, "I don't think that would be a good idea." Skog tried to maneuver around the defendant, but the defendant prevented him from leaving. The defendant pushed or dragged Skog through the door into a hallway leading to the exit. Skog, who looked "confused" and "scared," was maneuvering to leave but the defendant said he could not leave. The defendant then started punching Skog. Skog only raised his arms to fend off the blows, and eventually fell. The defendant continued to punch him.

Wheeler pulled the defendant off Skog. He had "red splotches on his face [and] looked pretty tired." Haigh held the defendant, and Skog delivered a faint punch to the defendant's face. Haigh then released the defendant. At that point, the defendant was within three to four feet of the door into the bar, and ten to fifteen feet from the door leading to the exit. Nothing prevented him from leaving. He went "right back after [Skog]." Wheeler stepped between them, yelling, "[J]ust . . . leave [him] alone." Skog asked Wheeler to take off his glasses, which she did. The defendant struck Skog on his left side. James Arsenault, a bystander who knew none of the participants, saw the defendant stab Skog with a knife. Skog fell to the floor. Blood came through his shirt, and he started shaking. He was conscious and had a pained expression. His eyes were open, but not focused, and were rolling back. The defendant, who was wearing boots, kicked Skog three times in the head. Skog's head bounced "like a soccer ball," twice, off the nearby wall.

The bartender forcibly escorted the defendant toward the exit. Skog was bleeding extensively and had difficulty breathing. Haigh tore open the upper portion of Skog's shirt and saw a wound. He yelled that Skog had been stabbed. The defendant broke free and ran out the door, pursued by a number of people. Richard Morin, a friend of Skog, tackled the defendant in a parking lot across the street. The defendant attempted to stab him, but Morin took the knife away from him and threw it away. Police later recovered the knife. After the defendant was handcuffed, Morin asked him if he had stabbed Skog, and the defendant admitted it.

The defendant testified at trial. He characterized the altercation with Skog as mutual combat, although he could not remember who threw the first punch. He said that he pulled the knife only after Haigh, Wheeler, and Skog advanced on him, and that he did so only to frighten them. He testified that he did not intend to kill him, only to scare him. He said he did not know exactly how Skog came to be stabbed; just that it all "happened so quickly."

2. *Motion for required finding.* The defendant argues that the evidence was insufficient as matter of law to sustain a conviction of murder on a theory of extreme atrocity or cruelty, and

that his motion for a required finding of not guilty should have been allowed. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979). He contends that the evidence was insufficient to establish the presence of any of the factors we identified in *Commonwealth* v. *Cunneen*, 389 Mass. 216, 227 (1983). We have stated that so long as one or more of the *Cunneen* factors are present, "[w]hether extreme atrocity or cruelty exists 'must be decided by the jury, who, as the repository of the community's conscience, can best determine when the mode of inflicting death is so shocking as to amount to extreme atrocity or cruelty.' " *Commonwealth* v. *Hunter*, 416 Mass. 831, 837 (1994), *S.C.*, 427 Mass. 651 (1998), quoting *Commonwealth* v. *Connolly*, 356 Mass. 617, 628, cert. denied, 400 U.S. 843 (1970).

One such factor to be considered by the jury is the defendant's "indifference to or taking pleasure in the victim's suffering." *Commonwealth* v. *Cunneen*, *supra*. There was evidence that the defendant inflicted knife wounds on Skog after beating him soundly with his fists. As Skog was lying on the floor conscious, in pain, and shaking, the defendant kicked him up to three times in the head hard enough to cause his head to bounce off the wall twice. The evidence was sufficient to support a finding of extreme atrocity or cruelty.

3. *Peremptory challenge.* The defendant objected to the prosecutor's peremptory challenge of a prospective juror, claiming that she was the only African-American in the venire. The judge initially expressed doubt that she was African-American. After noting that neither the defendant nor Skog was African-American, the judge asked the prosecutor to provide a reason for the challenge. The prosecutor stated she was challenging the prospective juror because she was a guidance counsellor, and not because of her race. After some discussion, the judge agreed that an occupation in a rehabilitative field might be some indication of a prospective juror's inclination toward sympathy, and he allowed the challenge. In response to defense counsel's persistent concern that the prospective juror was indeed the only African-American in the venire, the judge asked her if she was a member of a minority group, to which she responded affirmatively. In concluding the matter, the judge noted that the

victim, the witnesses, and the defendant were not members of a minority, and confirmed his decision.

A peremptory challenge is presumed to be proper, but the presumption may be rebutted on a showing that "(1) there is a pattern of excluding members of a discrete group and (2) it is likely that individuals are being excluded solely on the basis of their membership within this group." *Commonwealth* v. *Curtiss*, 424 Mass. 78, 80 (1997). "Factors in the assessment include not only the numbers and percentage of group members excluded, but also common group membership of the defendant and the jurors excluded, and of the victim and the remaining jurors." *Commonwealth* v. *Robinson*, 382 Mass. 189, 195 (1981). There is no per se rule, and a single peremptory challenge may be sufficient to rebut the presumption. *Commonwealth* v. *Curtiss*, *supra* at 79, and cases cited.

If the judge determines that it is likely that a prospective juror has been excluded because of membership in a discrete group, the burden shifts to the challenging party to provide a group-neutral reason for the challenge. See *id.* at 80-81. The reason must be "clear and reasonably specific," and must be "personal to the juror and not based on the juror's group affiliation." *Commonwealth* v. *Burnett*, 418 Mass. 769, 771 (1994), quoting *Batson* v. *Kentucky*, 476 U.S. 79, 98 n.20 (1986), and *Commonwealth* v. *Young*, 401 Mass. 390, 401 (1987). If the judge decides that the explanation is both genuine and adequate, he or she should say so. If the judge decides otherwise, he or she should explicitly state that the explanation is inadequate. *Commonwealth* v. *Burnett*, *supra* at 771. See *Commonwealth* v. *Curtiss*, *supra* at 82 n.4 (judge should use words such as "bona fide," "sham," or "pretext" to assure requisite determination has been made). "[A]n appellate court will accord substantial deference to the decision if it is supported by the record." *Commonwealth* v. *Burnett*, *supra*.

Here, the judge failed to specify whether there existed a pattern of improper exclusion. Indeed, at the time of his initial ruling he expressed doubt that the prospective juror was African-American. Our rule requires judges to find that a pattern of improper exclusion has been shown before a party may be required to explain its basis for exercising a challenge. See

*Commonwealth* v. *Curtiss, supra* at 80; *Commonwealth* v. *Soares,* 377 Mass. 461, 490-491, cert. denied, 444 U.S. 881 (1979).

There is an exception to this rule. We recognize the difficulty a judge faces when trying to ascertain the existence of a pattern of improper exclusion after only one or two members of a discrete group have been challenged and the venire contains only a few members of the group. The practical reality is that, unless the judge is permitted to treat the early use of challenges in such circumstances as establishing a pattern, the venire may be substantially depleted of members of a group before a pattern can be identified by palpable evidence of improper exclusion. In such cases a judge has broad discretion to require an explanation without having to make the determination that a pattern of improper exclusion exists. Cf. *Commonwealth* v. *Curtiss, supra* at 82. Here, the judge could have required an explanation because there was a paucity of African-Americans in the venire.[1] *Id.* Because the judge did order the prosecutor to explain her reason for challenging the prospective juror,[2] we will treat the judge's order as falling within the rule of *Commonwealth* v. *Curtiss, supra* at 80-82.

The defendant next argues that the judge abused his discretion when he determined that the prosecutor's challenge was legitimate. See *Commonwealth* v. *Fruchtman,* 418 Mass. 8, 15, cert. denied, 513 U.S. 951 (1994). Contrary to the defendant's assertion, the prosecutor's challenge of the prospective juror because she was a guidance counsellor was not per se inadequate. In some circumstances, a juror's occupation alone may be facially insufficient to rebut a prima facie showing that a peremptory challenge was improperly exercised. The converse is also true. See *Commonwealth* v. *Green,* 420 Mass. 771, 774, 778 (1995) (defense counsel's explanation that juror's father and brother were police officers was sufficient). See also *United*

---

[1] It was later determined that there was at least one other African-American person in the venire who was ultimately seated on the jury.

[2] The fact that the defendant, the victim, and the witnesses were Caucasian was not dispositive of the issue, because the defendant is entitled to a jury selected by nondiscriminatory criteria, and prospective jurors are entitled to a discrimination-free jury selection process. See *Powers* v. *Ohio,* 499 U.S. 400 (1991); *Commonwealth* v. *Vann Long,* 419 Mass. 798, 806 (1995).

*States* v. *Maxwell*, 160 F.3d 1071, 1075 (6th Cir. 1998) (permissible for prosecutor to challenge juror because she was guidance counsellor, and in his experience, guidance counsellors were overly sympathetic with defendants). The defendant's reliance on *Commonwealth* v. *Burnett*, 36 Mass. App. Ct. 1, *S.C.*, 418 Mass. 769 (1994), is misplaced. In that case, the Appeals Court accorded no deference to the judge's decision to uphold a prosecutor's challenge of a youth services program director because the judge failed to make any rulings as to whether the reason asserted by the prosecutor was a pretext. *Id.* at 5. On further appellate review, we agreed. *Commonwealth* v. *Burnett*, 418 Mass. 769, 770 (1994). Here, the judge ruled, without subscribing to the prosecutor's viewpoint, that because the juror was engaged in a rehabilitative occupation that probably called on her to show sympathy for human weakness, the prosecutor's challenge was legitimate.

The defendant argues that the judge "erred by supplying the missing detail" when he elaborated on the Commonwealth's reasoning for removing a guidance counsellor from the jury. After the judge required the prosecutor to justify her challenge, he "was required to make an independent evaluation of the prosecutor's reasons and to determine specifically whether the explanation was bona fide or a pretext." *Commonwealth* v. *Calderon*, 431 Mass. 21, 26 (2000). Although it is inappropriate for a judge independently to suggest his or her own reason why a juror should not serve, see *Commonwealth* v. *Fryar*, 414 Mass. 732, 739-741 (1993), *S.C.*, 425 Mass. 237, cert. denied, 522 U.S. 1033 (1997), the judge did not do so here. The judge engaged both the prosecutor and defense counsel in a full discussion on the issue and provided defense counsel with the opportunity to argue whether the juror's occupation as a guidance counsellor was an adequate basis to challenge her. Where the record shows that the judge gave the matter "meaningful consideration," we will not second-guess his decision. See *Commonwealth* v. *Calderon, supra.*

4. *Dismissal of deliberating juror.* The Commonwealth moved to discharge a deliberating juror whose son and husband had been arrested the previous evening as a result of an altercation between them. The prosecutor expressed concern that the juror's

son was held in lieu of bail at the same house of correction as the defendant. The juror, who was not aware that the defendant was being held at the same place, said she could remain impartial. The judge voiced the opinion that she could,[3] but he nevertheless discharged her for the reason advanced by the prosecutor. The defendant objected, arguing that the prosecutor's concern that the defendant and the juror's son were at the same institution could be resolved by relocating the defendant.[4]

The defendant argues that there was inadequate cause to remove the juror. See G. L. c. 234, § 26B (deliberating juror may be discharged when, for specified personal reasons or "other good cause shown," juror "is unable to perform his duty"). We disagree. In an abundance of caution, the judge determined that a compelling reason existed for discharging the juror.[5] See G. L. c. 234A, § 39 ("The court shall have authority to excuse and discharge a juror participating in jury deliberations after a hearing only upon a finding of an emergency or *other compelling reason*" [emphasis added]). We discern no error in the discharge of the juror.

Moreover, the defendant fails to demonstrate that his rights under art. 12 of the Massachusetts Declaration of Rights were jeopardized or that he was otherwise prejudiced by the juror's discharge. See G. L. c. 234A, § 74 (providing that verdict shall not be set aside based on irregularity in excusing juror under G. L. c. 234A unless objecting party has been prejudiced thereby). Here, there was no danger that a dissenting juror was allowed to evade her responsibilities. See *Commonwealth* v. *Connor*, 392 Mass. 838, 843 (1984). Rather, truly unique and compelling circumstances arose that warranted the juror's discharge.

---

[3]Having reviewed the entire transcript, there can be no doubt that the judge's statement to the juror that he believed she could be impartial was not a finding but an expression of his overriding desire to make everyone, including witnesses, feel comfortable and to treat everyone with utmost civility.

[4]The logistics of relocating the defendant were not adequately developed in the record for purposes of meaningful appellate review.

[5]Apart from the judge's apprehension that the juror's son was housed at the same institution as the defendant and that "pressure" could be brought against the juror through her son, we agree with the Commonwealth that a palpable conflict existed in that the juror's son was arrested, held in jail, and awaiting prosecution by the same district attorney's office prosecuting the defendant.

5. *Probative use of grand jury testimony.* The defendant argues that the judge erred by admitting the grand jury testimony of Paul Cauble as probative without first requiring the Commonwealth to show that it was inconsistent with his trial testimony. See *Commonwealth* v. *Daye*, 393 Mass. 55, 75 (1984). The Commonwealth contends that *Daye*'s foundational requirement had been met because Cauble had been declared a hostile witness. Because the defendant timely objected, we review under the prejudicial error standard.

The prosecutor had asked Cauble if he knew that Carloni had had sexual relations with Skog. Cauble said that he had no knowledge of this fact. His testimony was inconsistent with his grand jury testimony, which indicated that he gained knowledge of this fact from the defendant. His grand jury testimony on this point was properly admitted for its probative value. *Id.*

The judge subsequently ruled, based on Cauble's demeanor and resistance to questioning by the prosecutor, that he was a hostile witness. In response to leading questions, Cauble then acknowledged testifying before the grand jury that the defendant told him he wanted to beat up Skog and that he intended to fight Skog. The defendant argues that this testimony should not have been admitted as probative because Cauble had not first testified inconsistently, and the prosecutor's forceful use of this improperly admitted testimony during her closing argument requires a new trial.

The admission of this testimony was error. Each inconsistency must be established and considered separately before grand jury testimony may be admitted for its probative use under *Daye*. A witness's status as a hostile witness itself does not satisfy any foundational requirement under *Commonwealth* v. *Daye*, *supra*. However, the error was harmless. Cauble's grand jury testimony was merely cumulative of D'Amelio's testimony on the same subject and the defendant's testimony that he had asked D'Amelio if she would mind if he hit Skog. Moreover, the jury's rejection of the Commonwealth's theory of deliberate premeditation suggests that this evidence carried little weight.

6. *Prior bad act evidence.* The defendant argues that the judge erred by admitting, over objection, evidence that he attacked Gary Marston, a potential rival for Carloni's affections,

in January, 1997. He contends that the prior incident was so dis-
similar to the incident for which he was tried, and so unrelated
in time and place, that it was neither part of a pattern of conduct
nor evidence of a distinctive method of committing a crime,
and as such, was inadmissible.

"[E]vidence of other criminal behavior may not be admitted
to prove the propensity of the accused to commit the indicted
offense but it is admissible for other relevant probative
purposes." *Commonwealth* v. *Martino*, 412 Mass. 267, 280
(1992), quoting *Commonwealth* v. *Gallison*, 383 Mass. 659, 672
(1981). Jealousy as a motive, if relevant, is one such purpose.
See *Commonwealth* v. *Wilson*, 427 Mass. 336, 349 (1998). Here,
the Commonwealth offered evidence of the prior attack to show
jealousy as the defendant's motive for killing Skog. *Id.* The
incident occurred approximately two months earlier. The
evidence was sufficiently recent and probative of the defendant's
motive, and within the judge's discretion to admit it for that
purpose. See *Commonwealth* v. *Marrero*, 427 Mass. 65, 67-68
(1998).

The defendant's reliance on *Commonwealth* v. *Leonard*, 428
Mass. 782 (1999), is inapposite. In that case, prior bad act
evidence was offered to establish the defendant's identity as the
perpetrator. We said that the proponent must demonstrate "that
there exists a uniqueness or particularly distinguishing pattern
of conduct common to the current and former incidents." *Id.* at
786. Uniqueness or pattern is required where evidence of prior
bad acts is offered to prove identity. See *Commonwealth* v.
*Jackson*, 417 Mass. 830, 836 (1994). The evidence here was not
offered on the question of identity, but to show motive. The
foundational requirements are different. See *Commonwealth* v.
*Weichell*, 390 Mass. 62, 73 (1983), cert. denied, 465 Mass.
1032 (1984) (motive evidence admissible if it "tends to establish
the issue" or "constitutes a link in the chain of proof"). The
defendant's argument that the two episodes lacked similarity is
therefore unavailing.

The defendant further contends that this evidence was
improperly admitted for purposes of showing a propensity for
wrongdoing. He points to the judge's reference in his instruc-
tion that the incident was admissible to show "pattern of

conduct." Although the judge's use of such language was unnecessary where the evidence was offered to show neither identity nor pattern, the judge specifically instructed that the evidence could not be considered as character or propensity evidence, and the jury are presumed to have followed that instruction. Cf. *Commonwealth* v. *Cameron*, 385 Mass. 660, 668 (1982). There was no error.

7. *Defendant's state of mind prior to incident.* The defendant offered evidence that on the same night that he attacked Marston, Skog telephoned Carloni. Carloni told the defendant that she had been seeing Skog. If so permitted to testify, the defendant would have said that the information was "no big deal" to him. The judge excluded the evidence as too remote in time from the stabbing. The defendant argues that this was "facially unfair" because the judge had allowed the Marston incident to prove motive even though it was as remote in time as the defendant's alleged reaction to Carloni's relationship with Skog.

We agree that if the judge determined that the Marston incident was sufficiently close in time to prove the defendant's motive in the form of jealousy, then evidence of the defendant's indifference to Carloni's relationship with Skog should have been admitted to rebut the motive evidence. It tended to show that the defendant knew about Skog's relationship with Carloni earlier than March, 1997, yet took no actions against Skog at the time.

The error was harmless. The defendant testified about his relationship with Carloni, which he characterized as a close friendship. He said that he was dating other women at the time and that his concern regarding Carloni's relationship with Skog did not go beyond sympathy for her. One more proclamation in this regard would have been wholly cumulative. Moreover, there was no evidence as to the nature of Skog's relationship with Carloni as of January, 1997. The defendant's knowledge that the relationship had been intimate was not acquired until March, 1997, at which time his attitude toward Skog became demonstrably aggressive.

8. *Motion for a mistrial.* The defendant moved for a mistrial after Morin testified to a statement made by the defendant that the judge had ruled before trial was inadmissible. He testified

that, as to the stabbing, the defendant said that "he got away with it before."[6] Having found no misconduct on the part of the prosecutor, the judge struck the answer and gave a curative instruction in which he twice directed the jury to disregard the answer.

"Whether to declare a mistrial is within the trial judge's discretion." *Commonwealth* v. *Gallagher*, 408 Mass. 510, 517 (1990). Where a party seeks a mistrial in response to the jury's exposure to inadmissible evidence, the judge may rely on curative instructions to correct any error and to remedy any prejudice. See *Commonwealth* v. *Kilburn*, 426 Mass. 31, 38 (1997), and cases cited. As long as the judge's instructions are prompt and the jury do not again hear the inadmissible evidence, as here, a mistrial is unnecessary. See *Commonwealth* v. *Cunneen*, 389 Mass. 216, 223-224 (1983); *Commonwealth* v. *Gallagher*, *supra* at 517-518. The judge's curative instructions were sufficient to remedy any possible prejudice to the defendant. See *Commonwealth* v. *Paszko*, 391 Mass. 164, 178-179 n.17 (1984). The motion for a mistrial was properly denied.

9. *Defendant's claims of self-defense.* The defendant argues that the judge erred in excluding his assertions of self-defense to Commonwealth witnesses. He claims that those assertions were admissible (1) under the rule of verbal completeness as "explanatory assertions of self defense" with regard to his admission that he stabbed Skog; (2) to show his intent and state of mind; or (3) as spontaneous utterances.

Several witnesses testified to various remarks the defendant made to Morin about the stabbing. The parties and the judge treated those remarks as a single statement in which the defendant admitted stabbing Skog, adding that he would get away with it as he had once before, and that it was self-defense. The judge had ruled before trial, on the defendant's motion in

---

[6]The defendant seeks to reargue that there was a perceivable reaction by some jurors to the inadmissible testimony. To the extent the judge declined to adopt defense counsel's characterization of particular jurors' reactions, it was within his discretion to do so and we reverse only on a showing of clear error, because the judge is best situated to observe the jury's reactions and to determine whether a new trial is warranted. See *Commonwealth* v. *Santiago*, 425 Mass. 491, 496 (1997), *S.C.*, 427 Mass. 298, and 428 Mass. 39, cert. denied, 525 U.S. 1003 (1998). There has been no such showing.

limine, that the segment of his statement in which he said that he had gotten away with it once before would be excluded. The rationale was that it was inadmissible evidence of a prior bad act. See *Commonwealth* v. *Montanino*, 409 Mass. 500, 505 (1991), and cases cited. The judge also ruled on the Commonwealth's motion in limine that the defendant's self-serving assertions that he acted in "self-defense" would be excluded. See *Commonwealth* v. *Watson*, 377 Mass. 814, 826-834 (1979), *S.C.*, 409 Mass. 110 (1991); *Commonwealth* v. *Henry*, 37 Mass. App. Ct. 429, 432 (1994). The portions of the statement that were not excluded were the defendant's admission that he stabbed Skog, and his assertion that he would get away with it.[7]

The defendant first contends that, because his claim of self-defense was intertwined with his admission that he stabbed Skog, he was entitled to offer the self-defense portion of the statement to explain his admission under the doctrine of verbal completeness. The rule of verbal completeness precludes a party from presenting a fragmented and misleading version of events by requiring the "admission of other relevant portions of the same statement or writing which serve to 'clarify the context' of the admitted portion." *Commonwealth* v. *Carmona*, 428 Mass. 268, 272 (1998), quoting *Commonwealth* v. *Robles*, 423 Mass. 62, 69 (1996). "The rule applies when the defendant's statement is (1) on the same subject as the admitted statement; (2) part of the same conversation as the admitted statement; and (3) necessary to the understanding of the admitted statement." *Commonwealth* v. *Clark*, 432 Mass. 1, 14 (2000).

Although the defendant's assertions of self-defense may have referred to his admission that he had stabbed Skog, as he claims, they also could have referred to the prior bad act, and the judge so determined. The judge could not let the defendant take

[7]The judge allowed Richard Morin to testify that the defendant said, "Hit me, hit me, I'll get away with it" (excluding "I've got away with it before" and "It was self defense"); Thomas Foley and Trevor Cuddy were permitted to testify, respectively, that the defendant said, "I'll get off" and "I'll get away with it" (excluding "like I did before" as inadmissible prior bad act testimony and "it was self-defense"); and Officer Thomas Lynch was permitted to testify that the defendant said, "I stabbed him and I'll do it again" (excluding, "I've done it before" as inadmissible prior bad act testimony, and "it was self-defense").

advantage of the ambiguity without affording the Commonwealth the same opportunity by referring to the prior bad act. The judge could have admitted the entire statement. The judge properly balanced the conflicting interests while preserving the integrity of the defendant's statement. We discern no clear error in the judge's decision to weigh these considerations and admit the defendant's statements, as limited.

Moreover, the judge gave the defendant the choice of admitting the entire statement. The defendant made the strategic choice to follow the judge's pretrial rulings. He may not now complain that the entire statement was not admitted. The judge's ruling did not affect the defendant's ability to raise the issue of self-defense, which he did raise. The prosecutor did not take unfair advantage of the pretrial ruling to argue that the issue of self-defense was a recent fabrication.

The defendant argues in the alternative that his various assertions of self-defense, uttered soon after the altercation, were admissible either as spontaneous utterances or to prove his present intent, knowledge, or other mental condition. See *Commonwealth* v. *Caldron*, 383 Mass. 86, 90-91 (1981). None of the assertions was admissible either as a statement of his then present intent or state of mind because they followed the incident. See P.J. Liacos, Massachusetts Evidence § 8.15, at 549 (7th ed. 1999). Neither was it error for the judge to reject the argument that the defendant's statements were spontaneous utterances, because it was within his discretion to find that they were not made at a time that "reasonably negated premeditation or possible fabrication." *Commonwealth* v. *Young*, 401 Mass. 390, 403 (1987), quoting P.J. Liacos, Massachusetts Evidence 351 (5th ed. & Supp. 1985). There was no error.

10. *Defendant's state of mind after incident.* The defendant was not permitted to testify that, on being told that Skog had died, he took no pleasure in the fact.[8] The defendant was told of Skog's death one and one-half hours after the stabbing. The

---

[8]The defendant also argues that he was not permitted to explain his demeanor, in response to a Franklin police officer's testimony that, during the booking procedure, he appeared "a little nonchalant," and to testify that he had only been booked for assault and battery by means of a dangerous weapon and had not been told that Skog had died. The record does not show that the defendant was restricted in this regard.

defendant's relevant state of mind on this point was his state of mind at the time of the offense, not one and one-half hours later, when he was in police custody. The defendant was allowed to testify about his state of mind when he produced the knife, stabbed Skog, and kicked him. There was no error.

11. *Initial aggressor instruction.* The defendant argues that the judge erred by including in his instruction on self-defense that "the original aggressor has no right to self defense unless he withdraws from the conflict in good faith and announces his intention of abandoning the fight." Contrary to the defendant's assertion, there was no objection to this aspect of the self-defense charge. Defense counsel requested the judge to repeat his instruction on heat of passion as a mitigating factor.

The defendant's reliance on *Commonwealth* v. *Barber*, 394 Mass. 1013 (1985), is misplaced. In that case no instruction on self-defense was given. Here, the evidence at trial indicated that the defendant initiated the confrontation. Thus, the judge's instruction was warranted. See *Commonwealth* v. *Hooks*, 38 Mass. App. Ct. 301, 305-306 (1995). There was no error.

12. *Assault and battery as lesser included offense.* The defendant faults the judge for refusing to instruct on the lesser included offense of simple assault and battery. The defense proceeded under the theory of accident, or, alternatively, self-defense. With respect to accident, the defense contends that the stabbing was unintended and occurred because Skog accidentally fell on the knife. The verdict, if that theory were not disproved, must be not guilty, and the judge so instructed. Simple assault and battery was not a possible verdict. Cf. *Commonwealth* v. *Charles*, 47 Mass. App. Ct. 191, 194-195 (1999). Under either defense theory, the facts did not warrant a simple assault and battery charge. See *Commonwealth* v. *Egerton*, 396 Mass. 499, 504 (1986). There was no error.

13. *Instruction on grand jury testimony.* At trial, Wheeler testified that Skog gave his glasses to her after the fight. She testified before the grand jury that he gave her his glasses when she first entered the hallway. Accordingly, defense counsel impeached Wheeler with this inconsistency. Defense counsel asked the judge to instruct the jury that they could consider Wheeler's grand jury testimony for its truth. See *Commonwealth*

v. *Daye*, 393 Mass. 55, 75 (1984). The judge stated that he would review the law and address the issue in his final charge. The judge did not give an instruction that Wheeler's grand jury testimony could be considered as probative. Instead, he told the jury as part of his general instruction on impeachment by prior inconsistent statement that they could consider certain grand jury testimony for its truth if it met the foundational requirements, which he explained. The defendant contends that the instruction was meaningless because the jury never heard the precise questions and answers before the grand jury and thus could not make the determination of inconsistency required under *Commonwealth* v. *Daye, supra.* The defendant concedes that he did not object to the instruction.

The instruction was not appropriate because it burdened the jury with a decision reserved for the judge.[9] The probative use of grand jury testimony is a question of law reserved for judges. The error did not create a substantial likelihood of a miscarriage of justice. The precise point in time that Skog gave his eyeglasses to Wheeler contributes little to the case. In particular, it sheds no light on who struck the first blow, or when and why the defendant resorted to the use of his knife. Defense counsel ably cross-examined Wheeler on this point. He emphasized in his closing that Skog handed his glasses to Wheeler as a prelude to a fair fight. As such, the contested evidence was elicited and argued before the jury for its probative value, and no juror could reasonably have failed to consider the evidence other than as defense counsel argued.

14. *Failure to disclose evidence.* The defendant claims that the Commonwealth failed to comply with pretrial discovery orders by not disclosing (1) that Wheeler would repudiate certain pretrial statements,[10] and that Haigh would give exculpa-

---

[9]When grand jury testimony is admitted for its probative use, juries should be so advised, preferably at the time of its admission. This avoids confusion with the more common use of prior inconsistent statements for impeachment purposes, a subject often reserved for general instructions at the end of the trial.

[10]Wheeler told police that Skog was bothered by the defendant's talking to D'Amelio in the bar; that Skog and the defendant exchanged angry words

tory testimony[11]; (2) expert testimony concerning blood spatter and defensive wounds; and (3) police notes concerning certain eyewitness statements.

a. *Inconsistent trial testimony, recantations, and exculpatory evidence.* The defendant has failed to show that the prosecutor had foreseen that Wheeler would give testimony materially at variance with her pretrial statements or her grand jury testimony. Contrast *Commonwealth* v. *Vieira*, 401 Mass. 828, 831-833 (1988) (victim told prosecutor two weeks before trial version substantially different from prior account, connecting defendants to crimes); *Commonwealth* v. *Vaughn*, 32 Mass. App. Ct. 435, 439-440 (1992) (police officer testified at trial for burglary and burning of dwelling house to third set of footprints though all evidence prior thereto indicated only two sets). The inconsistencies were not material. To require the Commonwealth to predict every minor variance in testimony would create an unreasonable burden. In any event, there was no prejudice because of the thorough cross-examination by defense counsel on these inconsistencies. See *Commonwealth* v. *Vieira, supra* at 834.

Haigh's testimony could have been disclosed earlier, but any prejudice from the failure to make timely disclosure of the anticipated testimony of Haigh was eliminated by the thorough and able cross-examination by defense counsel. See *id.*

b. *Expert testimony.* The pretrial conference report required disclosure of every expert opinion to be produced at trial. The defendant claims that the Commonwealth failed to disclose that its serologist would opine that "blood spatter" on the defendant's shirt indicated that "some force" was used to deliver the blow. The judge should not have allowed this testimony. The prosecutor's proffer that, because the serologist was an "expert," she could testify to her observations and opinions, was an inadequate response. The defendant was entitled to notice that the serologist would give an opinion as to blood spatter.

---

when Skog tried to follow D'Amelio out of the bar; and that Skog asked Wheeler to hold his eyeglasses at the beginning of the fight.

[11]Haigh testified that Skog hit the defendant while he, Haigh, held the defendant. The prosecutor first announced this in her opening statement two days before Haigh testified.

The lack of notice did not prejudice the defendant's case. The Commonwealth's pathologist, whose opinion is not challenged, testified that the fatal wound resulted from "significant force." That "some force" was applied was hardly a disputed issue at trial.

The defendant objected to the failure to disclose the pathologist's opinion that a wound on Skog's arm was consistent with a defensive wound. The opinion had not been specifically included in the pathologist's report. The defendant has failed to show resulting prejudice, as the opinion was, in essence, that the wound may have been a defensive wound if the parties were facing each other and Skog was in a certain position. Defense counsel cross-examined the pathologist on this point, eliciting testimony that the wound was consistent with a defensive wound only if the facts were as hypothetically provided by the prosecutor. There is no suggestion that the defendant, if given earlier notice of the opinion, would have altered his trial strategy in any way.

c. *Disclosure of police notes.* The defendant argues that the Commonwealth failed, despite a specific request and order, to turn over handwritten notes of police officers taken in connection with witness statements. At a hearing on the defendant's motion to compel discovery of the notes, the prosecutor represented that none existed, and the judge accepted that assertion. During trial, it became apparent that the notes had once existed and that the prosecution had failed to deliver them. To demonstrate that he is entitled to a new trial, however, a defendant must make some showing that the notes were material, and that there existed a reasonable possibility that had they been provided they would have revealed facts favorable to him. Cf. *Commonwealth* v. *Kater*, 432 Mass. 404, 418 (2000).

There is no suggestion that the reports provided to the defense did not accurately recite the witnesses' statements to the police at the time of the police interviews. Moreover, the defense was provided with copies of percipient witnesses' handwritten statements as given to the Franklin police. The defendant has failed to show that his right to a fair trial was jeopardized by the

Commonwealth's failure to preserve and provide the officers' notes.[12]

15. *Review under G. L. c. 278, § 33E.* We have reviewed the entire record, the transcripts, the briefs, and the arguments. We decline to reduce the verdict or order a new trial.

*Judgment affirmed.*

---

[12]Our conclusion that the defendant's right to a fair trial was not jeopardized in this case should not be read as an endorsement of the Commonwealth's conduct. The prosecutor has an affirmative obligation diligently to search for and preserve materials that are discoverable in every criminal case. A lackadaisical attitude with regard to this responsibility is unacceptable in any criminal prosecution, and most emphatically so in a prosecution of murder.