## Commonwealth *vs.* Luis Maldonado.

Middlesex. February 6, 2003. - May 23, 2003.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Practice, Criminal,* Empanelment of jury, Challenge to jurors. *Jury and Jurors.*

The record at a criminal trial failed to establish that the Commonwealth met
its burden of demonstrating a bona fide race-neutral explanation for its
exercising a peremptory challenge to exclude the only remaining African-
American juror, where the explanation presented was marginally adequate,
and its genuineness significantly impaired by the absence of consistency in
its application to other jurors, and this court therefore reversed the
defendant's conviction. [462-467] Marshall, C.J., concurring, with whom
Greaney and Spina, JJ., joined.

Indictments found and returned in the Superior Court Department on January 14, 1999.

A pretrial motion to suppress evidence was heard by *Charles M. Grabau*, J., and the cases were tried before *Maria I. Lopez*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Thomas D. Ralph*, Assistant District Attorney (*Elizabeth Dunigan*, Assistant District Attorney, with him) for the Commonwealth.

*Ivan Mercado* for the defendant.

Cordy, J. Having been convicted of illegal possession of a firearm and of being an armed career criminal, Luis Maldonado appealed from the denial of his motion to suppress the firearm which prompted his arrest, the allowance by the trial judge of two Commonwealth peremptory challenges striking the only potential black jurors from the jury panel, and the denial of his motion for a required finding on the armed career criminal indictment. The Appeals Court reversed the convictions, concluding that the Commonwealth's exercise of one of its

peremptory challenges was not race neutral and should have been disallowed. *Commonwealth* v. *Maldonado*, 55 Mass. App. Ct. 450 (2002).[1] We granted further appellate review solely on the question of the propriety of the Commonwealth's use of its peremptory challenge. We reverse the convictions because the record below fails to establish that the Commonwealth met its burden of demonstrating a bona fide, race-neutral explanation for its exercise.

1. *Background.* The jury pool for Maldonado's trial contained two African-Americans. The first, a Superior Court judge, was initially seated on the panel but was challenged by the Commonwealth.[2] More jurors were challenged by each side, until the second and final African-American juror was seated. The Commonwealth used its last peremptory challenge to exclude that juror. At that point, on her own motion, the trial judge remarked to the prosecutor that "the only black potential juror" had just been challenged, and demanded a reason. The prosecutor offered the following:

> "I would put forth two reasons. First of all, I would submit that he doesn't have any children. He's single all his life. I have a young police officer who just started in the job. I'm a young [district attorney]. He might not find my witness as experienced as an older person — not having any children — starting out in the field. Secondly, I would note that the defendant is certainly entitled to a jury of his peers, a cross-section; but he's not entitled to have someone of his race in the jury box. I think it's from a proper cross-section. So I would put — on the record, I would put forth those two reasons."

The judge was skeptical of the prosecutor's explanation that the juror was being challenged because of his single status and lack

---

[1]The Appeals Court concluded that the motion to suppress was properly denied. *Commonwealth* v. *Maldonado*, 55 Mass. App. Ct. 450, 454 (2002). While the evidence was sufficient to establish that Maldonado was a previous offender, the Appeals Court ruled that its reversal of the firearm conviction in this case rendered invalid his conviction on the armed career criminal indictment. *Id.* at 459-460.

[2]Maldonado has not argued on appeal that the exclusion of this juror constitutes grounds for reversal of his convictions.

of children. She pressed the prosecutor as to what difference such a status made. The prosecutor responded:

> "Well, I mean, it's like anything. I mean, there was a minister up there who I thought would do the righteous thing, but he also had an earring in. You know, I mean, there's many ways of just looking at the jurors, too. And I think the fact that he doesn't have any kids, and he's fifty-five years old — I have a young — I'm a young [district attorney]. I have a young witness, which is the only one that saw the gun in the lap. That's the reason that I would excuse him. It's just a feeling. That's why I used my peremptory. I mean, it's not because of his color. It's certainly not that."

The judge then allowed the juror to be excused, over Maldonado's objection, without findings or further explanation.

The Appeals Court held that the judge's decision to allow the challenge to stand was error. Citing *Commonwealth* v. *Burnett*, 418 Mass. 769 (1994), the court concluded that the judge had not followed the procedure mandated for discerning impermissible challenges when she failed to make a finding as to whether the prosecutor's proffered reason for the challenge was bona fide. *Commonwealth* v. *Maldonado*, *supra* at 456, 458. Consequently, the judge's decision to exclude the juror was due no deference on appellate review. *Commonwealth* v. *Calderon*, 431 Mass. 21, 26-27 (2000). The Appeals Court then proceeded to examine the Commonwealth's proffered reason for the challenge and, finding "no apparent reason" why the Commonwealth would want to keep a juror off the panel just because he was fifty-five years old and childless, it rejected the Commonwealth's explanation and ordered that Maldonado's conviction be reversed. *Commonwealth* v. *Maldonado*, *supra* at 457-458.

2. *Discussion.* This court has on several recent occasions given direction on the process to be used by trial judges in evaluating the exercise of peremptory challenges when confronted with a claim of their unlawful use. See *Commonwealth* v. *Garrey*, 436 Mass. 422 (2002); *Commonwealth* v. *Rodriguez*, 431 Mass. 804 (2000); *Commonwealth* v. *Calderon*, *supra*; *Commonwealth* v. *LeClair*, 429 Mass. 313 (1999); *Com-*

*monwealth* v. *Curtiss*, 424 Mass. 78 (1997); *Commonwealth* v. *Burnett, supra*. Peremptory challenges are presumed to be proper, but that presumption may be rebutted on a showing that "(1) there is a pattern of excluding members of a discrete group and (2) it is likely that individuals are being excluded solely on the basis of their membership" in that group. *Commonwealth* v. *Garrey, supra* at 428, quoting *Commonwealth* v. *Curtiss, supra* at 80.[3] The issue of the improper use of peremptory challenges may be raised by the party opposing the challenge or, sua sponte, by the trial judge. See *Commonwealth* v. *LeClair, supra* at 322, and cases cited ("immaterial" whether issue raised by judge or opposing party). In either case, once raised, the judge must make a finding as to whether a prima facie showing of an improper use of peremptory challenges has been made.[4] *Commonwealth* v. *Burnett, supra* at 771. If the judge finds that it has, the burden shifts to the party exercising the challenge to provide a "group-neutral" explanation for it.[5] *Commonwealth* v.

---

[3]In *Commonwealth* v. *Garrey*, 436 Mass. 422, 429 (2002), we noted that in some cases there will be a "paucity" of members of the allegedly targeted group, or the alleged pattern of excluding them will only be in its early stages when the opposing party seeks to block a particular peremptory challenge. We stated that a judge in those cases could still find that a prima facie case of discrimination had been made and require an explanation from the challenging party. *Id.* at 428-429. See *Commonwealth* v. *Fryar*, 414 Mass. 732, 738 (1993), *S.C.*, 425 Mass. 237, cert. denied, 522 U.S. 1033 (1997) ("challenge of a single prospective juror within a protected class could, in some circumstances, constitute a prima facie case of impropriety"). This is so because the ultimate issue is not whether there is a "pattern" of excluding a discrete group, but whether the challenge made to any member of the panel is impermissibly based on the juror's membership in one of the discrete groups protected under *Commonwealth* v. *Soares*, 377 Mass. 461, cert. denied, 444 U.S. 881 (1979).

[4]In order to ensure that the important protections set forth in *Commonwealth* v. *Soares, supra* at 491, are fully adhered to, the burden of making this showing ought not be a terribly weighty one. This view is shared by a number of courts, some of which have dispensed with the need for the showing altogether and require an inquiry whenever a *Soares*-type objection is made to the use of a peremptory challenge. See *State* v. *Holloway*, 209 Conn. 636, 645-646, cert. denied, 490 U.S. 1071 (1989); *State* v. *Johans*, 613 So. 2d 1319, 1321 (Fla. 1993); *State* v. *Parker*, 836 S.W.2d 930, 939 (Mo.), cert. denied, 506 U.S. 1014 (1992); *State* v. *Chapman*, 317 S.C. 302, 305-306 (1995), overruled on other grounds, *State* v. *Adams*, 322 S.C. 114 (1996).

[5]We recognize that if the judge initiates a sua sponte inquiry into the justification for the challenge, this initiation almost necessarily includes an

*Garrey, supra* at 428, citing *Commonwealth* v. *Curtiss, supra* at 80-81. The judge must then specifically determine whether the explanation is "bona fide" or a mere "sham," "belatedly contrived to avoid admitting facts of group discrimination." *Commonwealth* v. *Soares,* 377 Mass. 461, 491, cert. denied, 444 U.S. 881 (1979), quoting *People* v. *Wheeler,* 22 Cal. 2d 258, 282 (1978).[6] See *Commonwealth* v. *Burnett, supra* at 771.

The determination whether an explanation is "bona fide" entails a critical evaluation of both the soundness of the proffered explanation and whether the explanation (no matter how "sound" it might appear) is the actual motivating force behind the challenging party's decision. See *Commonwealth* v. *Burnett, supra* at 771 (judge must decide whether challenges *"were based* on the juror's membership in a discrete group" [emphasis added]); *Commonwealth* v. *Soares, supra* at 490 (judge must decide whether "challenges have been exercised *so as to exclude* individuals on account of their group affiliation" [emphasis added]). In other words, the judge must decide whether the explanation is both "adequate" and "genuine." *Commonwealth* v. *Garrey, supra* at 428.

An explanation is *adequate* if it is "clear and reasonably specific," "personal to the juror and not based on the juror's group affiliation" (in this case race), *Commonwealth* v. *Burnett,*

---

implicit finding that the prima facie case of discrimination has been made. See *Commonwealth* v. *Rodriguez,* 431 Mass. 804, 808 (2000); *Commonwealth* v. *Calderon,* 431 Mass. 21, 25 (2000); *Commonwealth* v. *Curtiss,* 424 Mass. 78, 81-82 (1997). This may not always be the case, however. A conscientious judge could decide, especially in the presence of an underperforming opposing party, to raise the issue of discrimination in that party's stead, in a situation in which, stepping back as the neutral fact finder, the judge may not ultimately be convinced that a prima facie case has been made. The essential point is that an appellate court must be able to discern from the record whether that preliminary finding has been made, one way or the other.

[6]In making this determination, the judge should hear from the opposing party as well. See *Commonwealth* v. *Calderon, supra* at 26 (judge should allow opposing party opportunity to rebut challenging party's explanation). In this case, the judge did not ask for defense counsel's response, but did not bar counsel from commenting, either. Defense counsel confined his response to an objection to the judge's decision after it had been made, and does not on appeal contend that Maldonado's rights were violated because he was not permitted to participate. See *id.* at 27 ("Procedural mistakes in the allowance of a peremptory challenge by the Commonwealth, of course, do not constitute a per se basis for reversal").

*supra* at 771, quoting *Batson* v. *Kentucky*, 476 U.S. 79, 98 n.20 (1986), and *Commonwealth* v. *Young*, 401 Mass. 390, 401 (1987), and related to the particular case being tried. *Batson* v. *Kentucky*, *supra* at 98. Challenges based on subjective data such as a juror's looks or gestures, or a party's "gut" feeling should rarely be accepted as adequate because such explanations can easily be used as pretexts for discrimination.[7] *Commonwealth* v. *Calderon*, *supra* at 27 n.4 ("that [the juror] smiled at defense counsel, will not justify the challenge"); *Commonwealth* v. *Carleton*, 36 Mass. App. Ct. 137, 144 (1994), *S.C.*, 418 Mass. 773 (1994) (challenges based on visual assessment of jurors, level of education, and widower status insufficient because vague, general, and not specifically tied to issues in case). An explanation is *genuine* if it is in fact the reason for the exercise of the challenge. The mere denial of an improper motive is inadequate to establish the genuineness of the explanation. An explanation that is perfectly reasonable in the abstract must be rejected if the judge does not believe that it reflects the challenging party's actual thinking. *Commonwealth* v. *LeClair*, 429 Mass. 313, 323 (1999) (affirming judge's disallowance of peremptory challenge after he "determined that it was disingenuous").

Once a trial judge has ruled that a prima facie showing of the improper use of a peremptory challenge has been made, the need for specific findings by the judge as to whether the explanation offered by the challenging party is both adequate and genuine becomes readily apparent. On appeal, the appellate court must be able to ascertain that the judge considered both the adequacy and the genuineness of the proffered explanation, and did not conflate the two into a simple consideration of whether the explanation was "reasonable" or "group neutral." While the soundness of the proffered explanation may be a

---

[7]We reject the apparent view of the Supreme Court of the United States as expressed in *Purkett* v. *Elem*, 514 U.S. 765, 768 (1995), that a "silly" or "superstitious" reason (so long as it is race neutral) is adequate to overcome a prima facie case of discrimination. We agree with the dissent in that case that the "Court's unnecessary tolerance of silly, fantastic, and implausible explanations . . . demeans the importance of the values vindicated by our decision in *Batson* [v. *Kentucky*, 476 U.S. 79 (1986)]." *Purkett* v. *Elem*, *supra* at 777-778 (Stevens, J., dissenting).

strong indicator of its genuineness, the two prongs of the analysis are not identical. The appellate court must also be able to ascertain that the consideration afforded to both adequacy and genuineness was itself adequate and proper. For example, while a proffered explanation based solely on the innocuous demeanor of a juror might generally be considered inadequate, the judge's specific observations of the juror might well provide the basis for exclusion where odd or inappropriate deportment is noted. Without a finding explaining why the judge permitted the exclusion of such a juror, the appellate court would be left with a record reflecting a generally unacceptable basis for exclusion. Finally, while appellate courts may be equipped to some extent to assess the adequacy of an explanation, they are particularly ill-equipped to assess its genuineness. The prosecutor's own demeanor — the furtiveness of a glance, the hesitation in giving a response, or the frantic reading of the juror questionnaire before proffering an explanation may provide valuable clues as to whether even a sound reason for the challenge is genuine or merely a post hoc justification for an impermissibly motivated challenge. See *Miller-El* v. *Cockrell,* 537 U.S. 322, 339 (2003) ("reviewing court, which analyzes only the transcripts from voir dire, is not as well positioned as the trial court is to make credibility determinations"). For these important reasons, it is imperative that the record explicitly contain the judge's separate findings as to both adequacy and genuineness and, if necessary, an explanation of those findings.

In this case the judge found that the prosecutor had used her last challenge to exclude the only remaining African-American juror and, implicitly, that the challenge might be improper, rebutting the presumption of its proper use. *Commonwealth* v. *Calderon, supra* at 25. She then required the prosecutor to provide an explanation for the challenge, which she did. Having heard and questioned the explanation, however, the judge did not find that the prosecutor had met her burden of establishing an adequate, race-neutral explanation that was the genuine reason for the challenge, and offered no explanation for why she was permitting it to stand. In these circumstances the judge's ruling excluding the juror is accorded no deference. *Commonwealth* v. *Calderon, supra* at 27, citing *Commonwealth* v. *Burnett, supra* at 772.

We are therefore confronted with the same dilemma faced by the Appeals Court. We could infer that the judge must have properly and critically evaluated the adequacy and genuineness of the proffered explanation and concluded that the Commonwealth had met its burden on both, because, after expressing initial skepticism as to the prosecutor's stated reasons, she ultimately excluded the juror. Or, we could engage in the exercise undertaken by the Appeals Court, of questioning the logic of the proffered explanation, and analyzing its veracity by contrasting it with the Commonwealth's failure to challenge other jurors who were, in the court's view, similarly situated. Both approaches lead us over uncertain ground, providing ample support for our repeated emphasis on the need for specific findings by the trial judge.[8]

The Commonwealth bears the burden of countering the prima facie finding of improper use by proffering a "bona fide," race-neutral explanation for its peremptory challenge. The explanation presented here was marginally adequate, and its genuineness significantly impaired by the absence of consistency in its application to other jurors. For the reasons stated by the Appeals Court, the Commonwealth failed to meet this burden and the judge should not have accepted the prosecutor's challenge. Because the juror was impermissibly excluded on the basis of his race, Maldonado was denied his constitutional right to a jury selected free from discrimination. *Commonwealth* v. *Burnett, supra* at 772. His convictions must be reversed, the verdicts set aside, and the case remanded to the Superior Court for a new trial.

*So ordered.*

[8]The advantage that would have been enjoyed by the judge in making these determinations is evident when her actions are contrasted to the analysis undertaken by the Appeals Court. While the judge and the Appeals Court both questioned why a prosecutor would want to challenge a juror because he is fifty-five years old and childless, the judge was able to put that question to the prosecutor at the moment that she had exercised her challenge, and was able to observe the tenor and confidence of the prosecutor's response. Such observations are essential in determining the veracity of an explanation. The Appeals Court, on the other hand, was confined to pondering what logic there might be behind such a challenge.

MARSHALL, C.J. (concurring, with whom Greaney and Spina, JJ., join). I agree with the result reached by the court in this case. I write separately to express my concern about the continued use of peremptory challenges. This case illustrates, once again, the difficulties confronting defense counsel and prosecutors, Massachusetts trial judges and appellate courts, who struggle to give meaning to the constitutional mandate "that a jury be drawn from a fair and representative cross-section of the community." *Commonwealth* v. *Soares*, 377 Mass. 461, 478, cert. denied, 444 U.S. 881 (1979). See, e.g., *Commonwealth* v. *Garrey*, 436 Mass. 422 (2002); *Commonwealth* v. *Rodriguez*, 431 Mass. 804 (2000); *Commonwealth* v. *Calderon*, 431 Mass. 21 (2000); *Commonwealth* v. *LeClair*, 429 Mass. 313 (1999); *Commonwealth* v. *Curtiss*, 424 Mass. 78 (1997); *Commonwealth* v. *Burnett*, 418 Mass. 769 (1994). Despite vigilant efforts to eliminate race-based and other impermissible peremptory challenges, it is all too often impossible to establish whether a peremptory challenge has been exercised for an improper reason. I am therefore persuaded that, "rather than impose on trial judges the impossible task of scrutinizing peremptory challenges for improper motives," *Commonwealth* v. *Calderon, supra* at 29 (Lynch, J., dissenting), it is time either to abolish them entirely, or to restrict their use substantially. See, e.g., Ogletree, Just Say No!: A Proposal to Eliminate Racially Discriminatory Uses of Peremptory Challenges, 31 Am. Crim. L. Rev. 1099 (1994).