## Commonwealth vs. Trevon Mason.

No. 11-P-1662.

Suffolk. October 4, 2013. - March 20, 2014.

Present: Cypher, Katzmann, & Maldonado, JJ.

*Practice, Criminal,* Challenge to jurors, Jury and jurors. *Jury and Jurors. Resisting Arrest.*

This court concluded that a criminal defendant had fallen short of making a prima facie showing to rebut the presumption that the Commonwealth's peremptory challenges to two prospective jurors who shared the defendant's discrete racial group were proper, given the trial judge's implicit finding, based on voir dire, that it was not likely that the challenged jurors, who had prior experience with police or had family members who were on the opposite side of the law, were being excluded solely due to their membership in that racial group. [117-120]

A criminal defendant convicted of resisting arrest failed to demonstrate any prejudicial error arising from the denial of his pretrial motion to suppress evidence, given that the evidence in question was immaterial to the charge of which he was convicted. [120-121]

This court declined to find that a criminal defendant was prejudiced by any references at trial to his prearrest conduct [121], or that the Commonwealth's eliciting of fleeting, unobjected-to police testimony suggested an adverse inference from the defendant's exercise of constitutional rights [121-122].

COMPLAINT received and sworn to in the Dorchester Division of the Boston Municipal Court Department on September 9, 2008.

A pretrial motion to suppress evidence was heard by *Lawrence E. McCormick,* J., and the case was tried before *Robert E. Baylor,* J.

*Patricia A. DeJuneas* for the defendant.

*Paul B. Linn,* Assistant District Attorney, for the Commonwealth.

CYPHER, J. The defendant, Trevon Mason, was charged with armed robbery, possession of a firearm without a firearm identi-

fication card, assault by means of a dangerous weapon, two counts of assault and battery on a police officer, and resisting arrest. Before trial, the Commonwealth entered a nolle prosequi of the charge of armed robbery, and a judge dismissed the charge of possession of a firearm without an identification card. The Commonwealth elected not to go forward on the charge of assault by means of a dangerous weapon on the day trial began. At the close of the Commonwealth's case, the judge allowed the defendant's motion for a required finding of not guilty on one of the two charges of assault and battery on a police officer. The jury acquitted the defendant of the other count of assault and battery on a police officer. The defendant was convicted of resisting arrest.

The defendant appeals, claiming error in (1) the Commonwealth's exercise of peremptory challenges of prospective jurors who belong to a discrete racial group; (2) the denial of his pretrial motion to suppress evidence; and (3) the admission at trial of evidence of irrelevant and prejudicial prearrest conduct of the defendant. It is not necessary to provide a detailed recitation of the facts of the underlying charges. We affirm.

*The jury empanelment.* During voir dire, juror no. 8 informed the court that he felt that he had been mistreated during an arrest, but that he could be fair and impartial. He also indicated that he had graduated from the Maine police academy in June, 2010. Juror no. 22 informed the court during voir dire that she had a son who was currently incarcerated on a fifteen-year sentence for narcotics-related offenses, that another son used to deal in illegal drugs, and that her brother "was doing B&E." The juror indicated that she could be fair and impartial. During empanelment, the Commonwealth did not seek to eliminate these two jurors for cause but did exercise its only two peremptory challenges against them. Defense counsel questioned these challenges, and the following conversation took place at sidebar:

> DEFENSE COUNSEL: "Judge, I'd like to note for the record that both of the Commonwealth's challenges [inaudible] people of color, Juror Number 8 was a young Jamaican man who stated that he was actually a graduate of the Maine Police Academy."

THE COURT: "Okay."

DEFENSE COUNSEL: "When he was excused I did not make any challenge then but now the Commonwealth has excused Juror Number 22."

THE COURT: "Okay."

DEFENSE COUNSEL: "Who is another — one of the only other —"

THE COURT: "That's not true."

DEFENSE COUNSEL: "— two people of color."

THE COURT: "That is not true, there's another person of color sitting on that jury."

DEFENSE COUNSEL: "There is, there is one other person but he has excused two [inaudible] and one has stayed."

THE COURT: "No, no, he's challenged two people of color."

DEFENSE COUNSEL: "Correct, and there is one remaining on the jury."

THE COURT: "Which has been there since the beginning so — who has not been challenged."

DEFENSE COUNSEL: "That's correct, so I'm saying two out of the three of the persons of color have been challenged by the Commonwealth."

THE COURT: "[Inaudible] anything else?"

DEFENSE COUNSEL: "I'm sorry?"

THE COURT: "Anything else?"

DEFENSE COUNSEL: [No audible reply.]

THE COURT: "That does create a situation [inaudible] because you still have people of color sitting on the jury."

DEFENSE COUNSEL: "There is one person of color —"

THE COURT: "Okay."

DEFENSE COUNSEL: "— still sitting on the jury, but I think that it does create a situation that the court should address."

THE COURT: "I do not."

DEFENSE COUNSEL: "Note my objection, please."

THE COURT: "Okay, did you want to be heard on that?"

PROSECUTOR: "No, Your Honor."

Consequently, neither juror no. 8 nor juror no. 22 was seated on the jury of six.

Article 12 of the Massachusetts Declaration of Rights and the equal protection clause of the Fourteenth Amendment to the United States Constitution prohibit the exercise of peremptory challenges to exclude jurors solely by reason of their race. See *Commonwealth* v. *Soares*, 377 Mass. 461, 488, cert. denied, 444 U.S. 881 (1979); *Batson* v. *Kentucky*, 476 U.S. 79, 86 (1986). "Peremptory challenges are presumed to be proper, but that presumption may be rebutted on a showing that '(1) there is a pattern of excluding members of a discrete group and (2) it is likely that individuals are being excluded solely on the basis of their membership' in that group." *Commonwealth* v. *Maldonado*, 439 Mass. 460, 463 (2003), quoting from *Commonwealth* v. *Garrey*, 436 Mass. 422, 428 (2002). "[T]he burden of making this [prima facie] showing ought not be a terribly weighty one." *Commonwealth* v. *Maldonado*, 439 Mass. at 463 n.4.

Here, the trial judge's refusal to require an explanation from the prosecutor amounted to an implicit finding that the defendant failed to make a prima facie showing that the peremptory challenges were improper. See *Commonwealth* v. *Suarez*, 59 Mass. App. Ct. 111, 114 (2003) ("Implicit in the judge's response [declining to require the prosecutor to supply an explanation for her challenge] is a finding that a prima facie showing of impropriety had not been made"). We accept as an accurate description of fact the statements made by defense counsel and the judge during voir dire that the two prospective jurors in question (nos. 8 and 22), as well as the juror who was not chal-

lenged (no. 6), were people of color, and were the only members of the defendant's discrete racial group. See *Commonwealth* v. *Vann Long*, 419 Mass. 798, 805 n.8 (1995), citing *Mejia* v. *State*, 328 Md. 522, 535 (1992). Thus, the defendant demonstrated that the first element of the prima facie test was met: both of the prosecutor's peremptory challenges were exercised to the exclusion of prospective jurors who shared the defendant's discrete group.

The second element required to rebut the presumption that the peremptory challenges were exercised properly is a showing that it is likely that the individuals were being excluded solely on the basis of their group membership. "[I]n evaluating the second part of the test, the judge was entitled . . . to consider 'other relevant circumstances' available to him in deciding whether the defendant adequately rebutted the presumption that the prosecutor made . . . proper challenge[s]." *Commonwealth* v. *Issa*, 466 Mass. 1, 10 (2013), quoting from *Batson* v. *Kentucky*, 476 U.S. at 96. For example, "the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose." *Batson* v. *Kentucky, supra* at 97.[1]

"We 'will not overturn the judge's ruling if there is a sound basis in the record for her ruling.' " *Commonwealth* v. *Walker*,

---

[1]Had the prima facie showing been made, the practice would have been for the judge to inquire of the prosecutor. The prosecutor would have been required to provide an explanation for the challenges that was "bona fide" group-neutral. *Commonwealth* v. *Maldonado*, 439 Mass. at 463-464. "For the purposes of peremptory challenges, the term 'neutral' is defined as a reason which is not present in those nonminority panel members not struck by the Commonwealth." *Commonwealth* v. *Futch*, 38 Mass. App. Ct. 174, 177 (1995), citing *United States* v. *Wilson*, 853 F.2d 606, 610 (8th Cir. 1988).

The defendant would then have been given an opportunity to reply before the judge made his finding as to discriminatory intent. See *Commonwealth* v. *Calderon*, 431 Mass. 21, 26 (2000); *Commonwealth* v. *Futch*, 38 Mass. App. Ct. at 177-178. In finding whether an explanation is "bona fide," a judge must determine both whether it is "adequate" — that is, clear, reasonably specific, and personal to the juror rather than based on the juror's group affiliation — and "genuine" — that is, the true reason for the challenge. *Commonwealth* v. *Povez*, 84 Mass. App. Ct. 660, 666 (2013). See *Commonwealth* v. *Maldonado*, 439 Mass. at 464-465. See also *Commonwealth* v. *Garrey*, 436 Mass. at 428. The judge's findings should separately address both the adequacy and genuineness of the explanation. *Commonwealth* v. *Maldonado*, 439 Mass. at 465-466.

69 Mass. App. Ct. 137, 142 (2007), quoting from *Commonwealth* v. *Suarez, supra.* In *Walker,* this court concluded that an implicit finding of no pattern of improper challenges was supported in the record. 69 Mass. App. Ct. at 142. It was relevant to this determination that the prosecutor had not challenged the seating of other members of that group. *Ibid.,* citing *Commonwealth* v. *Suarez, supra* at 114-115. "The 'appellate court must be able to discern from the record whether that preliminary finding has been made, one way or the other.' " *Commonwealth* v. *Walker, supra,* quoting from *Commonwealth* v. *Maldonado,* 439 Mass. at 463 n.5.

Here, the trial judge knew from voir dire that the two challenged jurors had prior experience with police or had family members who were on the opposite side of the law. Voir dire revealed nothing similar in the backgrounds of other venire persons who were not members of the defendant's discrete racial group. See *Commonwealth* v. *Futch,* 38 Mass. App. Ct. 174, 177 (1995). The judge could have found that based on these factors, it was not likely that the challenged jurors were being excluded solely due to their membership in that group. See *Commonwealth* v. *Walker, supra* at 143 ("In such circumstances, these potential jurors could harbor resentment against the [district attorney's] office, and the prosecutor is entitled to strike them").

The defendant relies on *Commonwealth* v. *Hamilton,* 411 Mass. 313, 316-317 (1991), and *Commonwealth* v. *Futch,* 38 Mass. App. Ct. at 175-176, for the proposition that inquiry by the judge was required. In *Hamilton,* two of three black jurors were challenged, and in *Futch,* four of six black jurors were challenged. The defendant's reliance is misplaced. In *Hamilton,* the judge implicitly found that a prima facie showing had been made and, accordingly, inquired into the prosecutor's reasons, which the judge properly found to be group-neutral. 411 Mass. at 317. Similarly, in *Futch,* we concluded that the judge made an implicit finding of a prima facie showing because the judge asked the prosecutor to explain his reasons for exercising peremptory strikes against four of the six prospective black jurors. 38 Mass. App. Ct. at 175. After the prosecutor proffered reasons for the challenges, the judge failed to make findings whether

the reasons were bona fide, and compounded the error by improperly foreclosing the defendant from responding to those reasons, *id.* at 177; we stated that defendants "must be given the chance to rebut the proffered explanation as a pretext," *id.* at 178, quoting from *United States* v. *Wilson*, 816 F.2d 421, 423 (8th Cir. 1987). In this case, however, the judge did not implicitly find that a prima facie showing had been made, as evidenced by the judge's refusal to require an explanation of the prosecutor.

Any doubt whether a trial judge must find that a prima facie showing has been made in circumstances where the judge learns through voir dire of reasons sufficient to justify a peremptory challenge was resolved by *Commonwealth* v. *Issa*, 466 Mass. 1 (2013). In *Issa*, the Supreme Judicial Court concluded that the judge did not abuse his discretion by not requiring the prosecutor to explain his peremptory challenge of the sole African-American male juror, reasoning that the judge had learned during voir dire that the prospective juror had been arrested thirteen years earlier on a charge of criminal trespass and that the prosecutor believed the juror "look[ed] very familiar" and was "trying to place him." *Id.* at 7, 10.

Here, as in *Issa*, information elicited during voir dire supported the judge's implicit finding that the prospective jurors were not excluded solely because of their membership in a discrete racial group. We conclude that the judge did not abuse his discretion in finding that the defendant had fallen short of making a prima facie showing to rebut the presumption that the prosecutor's peremptory challenges were proper. "We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors." *Batson* v. *Kentucky*, 476 U.S. at 97.

*Other issues.* We need not dwell on the defendant's remaining issues. Assuming, without deciding, that the search of the defendant's apartment and the seizure of the defendant's person were unconstitutional, this conclusion does not avail the defendant as he was convicted only of resisting arrest and was acquitted of the remaining charges. "In assessing the sufficiency of the evidence to support a charge of resisting arrest, the relevant

inquiry is not whether the [search and seizure] would withstand a motion to suppress evidence. Rather, the proper focus is whether, at the time of the interaction, the officer, acting under color of authority, arrested the defendant, and whether the defendant resisted that arrest with force or violence or a means creating a substantial risk of causing bodily injury to the officer." *Commonwealth* v. *Lender*, 66 Mass. App. Ct. 303, 305 (2006). In *Commonwealth* v. *Moreira*, 388 Mass. 596, 599, 601 (1983), the Supreme Judicial Court held that a person no longer has the general right to resist forcibly an unlawful arrest. Even if we agreed with the defendant that the actions by police were not supported by consent or the presence of probable cause with exigent circumstances, the absence of these justifications for the warrantless entry and seizure of the defendant cannot provide a defense to the charge of resisting arrest. See *Commonwealth* v. *Lender*, *supra*. The evidence that the defendant claims should have been suppressed was immaterial to that charge, and its admission was harmless.

We also decline to find that the defendant was prejudiced by any references at trial to his prearrest conduct. Before trial, the prosecutor agreed not to use the word "robbery" to describe the earlier incident that led to the police presence at the defendant's residence, and the prosecutor asked police officers not to use the word "robbery" but to refer only to an "incident." At trial, one police officer stated that it was important to reach the defendant "[b]ecause [of] the seriousness of the crime, it was an armed robbery involved with a firearm." The judge denied the defendant's immediate motion for mistrial and promptly and forcibly instructed the jury to ignore any reference to the earlier incident. The jury acquitted the defendant of the most violent charge, assault and battery on a police officer. In these circumstances, the defendant was not prejudiced by any improper suggestion that he had a propensity to commit violent acts.

Nor did a substantial risk of a miscarriage of justice arise from the Commonwealth's eliciting of fleeting, unobjected-to police testimony that the defendant, upon learning from the first officer on scene that there was no warrant, closed the apartment door without speaking further. The brief testimony was simply in the nature of explanation of the whole chain of events and, in

the context of the entire trial, would not have been taken by the jury as suggesting an adverse inference from the exercise of constitutional rights. See *Commonwealth* v. *O'Laughlin*, 446 Mass. 188, 206 & n.16 (2006). It was defense counsel who chose to explore the warrant issue in greater detail during cross-examination and closing argument, as part of a reasonable tactical effort to show police overreach during the events in question.

*Judgment affirmed.*