After a jury trial, the defendant was convicted of one count of rape of a child and three counts of indecent assault and battery on a child. Asserting three trial errors, the defendant asks us to reverse his convictions and grant him a new trial. We affirm.
Background. The defendant and the victim lived in the same three-level home with other members of their family. The defendant was married to the victim's adoptive aunt. The defendant sexually assaulted the victim intermittently throughout much of her childhood, beginning when the victim was seven years old and continuing until she reached high school age and spent less time at home.[2] The victim did not report the abuse to police until she was twenty-five years old.
The jury heard first complaint testimony from the victim's mother, who testified that the victim told her that "she was sleeping and she felt something touch her and when she opened up her eyes, it was [the defendant]." She further testified that she and her sister -- who was married to the defendant -- brought the victim and the defendant to the basement to determine what happened. The defendant's wife asked him about the victim's accusations, and the victim's mother remembered him denying it and "swear[ing] on his mother's life" that he did not assault the victim. The defendant's wife, however, testified to the following after the accusation: "He was explaining. He said he did not, but he was trying to explain, and everybody was speaking at the same time because, like I said, it was very heated. I was speaking, he was trying to explain, my sister was speaking. It wasn't something that you just hear and you just - - everybody was just quiet and just say yes, no, yes, no. Everybody was trying to give their insight and what they've heard and what they have to say, so everybody -- it was pretty riled up, pretty much, put it that way." The defendant's wife further testified that, after she asked the victim if she and the defendant had sex, the defendant "was trying to explain to me. He did not say yes, no. He was trying to give me an answer, and [the victim's mother] was speaking. It was heated."
Prior to trial, the Commonwealth successfully moved in limine to allow the above exchange to be elicited and to argue that the defendant's "equivocal" responses amounted to an adoptive admission by silence. The defendant asserts that ruling, and the subsequent admission of that testimony over the defendant's objection, was error.
Another alleged error concerns jury voir dire, when the judge sua sponte questioned the Commonwealth regarding its use of two peremptory challenges, one to exclude a Hispanic male, the second to exclude a black male. The Commonwealth responded that the basis for the two challenges was that the first man had been arrested in the past, and the second man "indicated that he wouldn't believe the child unless there was medical evidence [connected] to the child." The judge ultimately allowed the second peremptory challenge, but noted that the last two were "to men of color" and that he was allowing the peremptory challenge, "but not without concern."
Discussion. As stated above, the defendant asserts three errors on appeal. First, he argues that the judge failed to follow the protocol set forth in Commonwealth v. Soares, 377 Mass. 461, 490-493 (1979), when addressing the Commonwealth's peremptory challenges, thereby creating a substantial risk of a miscarriage of justice. Second, he contends the judge erred in allowing the Commonwealth to elicit testimony to be used to argue the defendant's response to the accusations against him was tantamount to an admission by silence. Finally, he asserts that a substantial risk of a miscarriage of justice was created when the Commonwealth, during its closing argument, referenced a fact that was outside the evidence.
a. Peremptory challenges. "Peremptory challenges cannot be used 'to exclude members of discrete groups solely on the basis of bias presumed to derive from that individual's membership in the group.' " Commonwealth v. Rodriguez, 431 Mass. 804, 807 (2000), quoting from Soares, supra at 488. Race is one of those discrete groups. Soares, supra at 489. "Peremptory challenges are presumed to be proper, but that presumption may be rebutted on a showing that (1) there is a pattern of excluding members of a discrete grouping and (2) it is likely that individuals are being excluded solely on the basis of their membership in that group." Commonwealth v. Oberle, 476 Mass. 539, 545 (2017), citing Commonwealth v. Issa, 466 Mass. 1, 8-9 (2013). "The issue of the improper use of peremptory challenges may be raised by the party opposing the challenge or, sua sponte, by the trial judge." Commonwealth v. Maldonado, 439 Mass. 460, 463 (2003). If such a pattern is found by the judge,[3] the party exercising the challenge must establish a "group-neutral" explanation for the challenge. Oberle, supra. The judge must then consider that party's response to determine whether the reasoning is "adequate" and "genuine."[4] Ibid. "A trial judge has considerable discretion in ruling on whether a permissible ground for the peremptory challenge has been shown, and we will not disturb that ruling so long as it is supported by the record." Ibid.
The defendant contends that the Commonwealth's response to the judge's questioning did not adequately explain its rationale behind the use of the peremptory challenges, and that the judge departed from Soares and its progeny by failing to explicitly request the defense to respond to the Commonwealth's explanation. As the defendant did not object to this procedure at trial, we review for a substantial risk of a miscarriage of justice to determine first whether there was an error and, if so, whether that error has left us with "a serious doubt whether the result of the trial might have been different had the error not been made." Commonwealth v. Dirgo, 474 Mass. 1012, 1016 (2016), quoting from Commonwealth v. Azar, 435 Mass. 675, 687 (2002), S.C., 444 Mass. 72 (2005).
While the judge did voice concerns regarding the Commonwealth's explanation, he ultimately allowed the peremptory challenges -- an obvious acceptance of the Commonwealth's explanations. The prosecutor offered "group-neutral" explanations for the questioned peremptory challenges, and we discern no reason to intervene on the discretionary decision made by the judge. See Oberly, supra. Further, as described in Maldonado, supra, peremptory challenges may be called into question either by one of the parties or by the judge, sua sponte. Maldonado, supra at 463. In the present case, the defendant's counsel never objected to the Commonwealth's peremptory challenges, and had opportunity to interject after the judge questioned the challenges. The judge's failure to explicitly permit defense counsel to respond to the Commonwealth's rationale when it was the judge himself who initiated the questioning, therefore, was not error. Ibid.
b. Admission by silence. The defendant's wife testified to the conversation where the defendant was accused of assaulting the victim. She stated that, although the defendant was "trying to explain" the situation after being accused, he did say that he did not have sex with the victim when asked. The defense now asserts error in the judge's decision to allow the prosecutor to ask the additional question of "[s]o it would be correct that [the defendant] never answered that question?" Over the defendant's objection, the witness responded that the defendant "was trying to explain to me" and that "[h]e did not say yes, no," but also that the victim's mother was speaking at the time and the situation was "heated." The defendant further disputes the Commonwealth's argument that the above testimony amounted to an admission by silence.
We consider whether the judge erred in allowing the Commonwealth to ask that follow-up question, a decision we review to determine whether there was an abuse of discretion.[5] See Commonwealth v. Howard, 479 Mass. 52, 67 (2018) ("We review questions of admissibility ... under an abuse of discretion standard"). There was no abuse of discretion in allowing the Commonwealth to elicit evidence of a potential admission by silence on the defendant's part.
"The theory of adoptive admissions is straightforward: 'Where a party is confronted with an accusatory statement which, under the circumstances, a reasonable person would challenge, and the party remains silent or responds equivocally, the accusation and the reply may be admissible on the theory that the party's response amounts to an admission of the truth of the accusation.' " Commonwealth v. Braley, 449 Mass. 316, 320-321 (2007), quoting from Commonwealth v. MacKenzie, 413 Mass. 498, 506 (1992). While there was clearly no adoptive admission by silence, we conclude that the judge properly allowed the testimony to be elicited as grounds for a plausible argument of adoption by equivocation, because although the defendant did deny assaulting the victim, he continued to attempt to explain what had happened. Braley, supra. The jury, having been properly instructed by the judge as to what is evidence and what is argument, were free to accept or reject the Commonwealth's theory based on that testimony. There was no abuse of discretion.
c. Closing argument. The defendant's final asserted error stems from the Commonwealth's mention of a conversation between the victim and a Boston police officer that was outside of the evidence. As the defendant did not object to the Commonwealth's closing argument, we review for a substantial risk of a miscarriage of justice. Braley, supra at 329. The Commonwealth concedes that the prosecutor referenced facts not found in the trial transcript. Specifically, the Commonwealth discussed how the defendant did not mention contact made between himself and the victim in a parking lot when asked by the testifying officer when the last time he saw her was. As a preliminary matter, the defendant's failure to object or to request a jury instruction "is some indication that the comment by the prosecutor could not have created a substantial [risk] of miscarriage of justice." Commonwealth v. Ahart, 464 Mass. 437, 442 (2013). "Remarks made during closing arguments are considered in the context of the whole argument, the evidence admitted at trial, and the judge's instructions to the jury." Commonwealth v. Whitman, 453 Mass. 331, 343 (2009). The prosecutor's misstatement did not go "to the heart of the case." Commonwealth v. Johnson, 470 Mass. 300, 318 (2014), quoting from Commonwealth v. Coren, 437 Mass. 723, 731 (2002). With that in mind, coupled with the judge properly instructing the jury that closing arguments are not evidence, we conclude that the Commonwealth's misstatement was ultimately a minor error and one which could not shake the foundation of the jury's verdict. As such, no substantial risk of a miscarriage of justice stemmed from that misstatement.
Judgments affirmed.

The facts of the sexual assaults are not pertinent to this appeal and need not be discussed. Our factual recitation will focus only on those facts at issue before us.

"The burden of making a prima facie showing of a discriminatory pattern 'ought not to be a terribly weighty one.' " Oberle, supra, quoting from Maldonado, supra at 463 n.4.

"An explanation is adequate if it is 'clear and reasonably specific,' 'personal to the juror and not based on the juror's group affiliation.' ... An explanation is genuine if it is in fact the reason for the exercise of the challenge. The mere denial of an improper motive is inadequate to establish the genuineness of the explanation. An explanation that is perfectly reasonable in the abstract must be rejected if the judge does not believe that it reflects the challenging party's actual thinking." Maldonado, supra at 464-465 (citations omitted).

We review the evidentiary issue, which was properly challenged, to determine whether the judge abused his discretion such that his "decision falls outside the range of reasonable alternatives." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).